## STANTON *v.* BALTIC MINING COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 359. · Argued October 14, 15, 1915.—Decided February 21, 1916.

*Brushaber* v. *Un. Pac. R. R., ante,* p. 1, followed to effect that the . District Court has jurisdiction of an action by a stockholder against the corporation to enjoin it from voluntarily paying the tax under the Income Tax Law of 1913 on the ground of its unconstitutionality.

This court has, under § 238, Jud. Code, jurisdiction of a direct appeal from the judgment of the District Court refusing to enjoin a corporation from paying the tax under the Income Tax Law of 1913, in a suit brought by a stockholder on the ground of unconstitutionality of the statute. ·

The Income Tax Law of 1913 is not unconstitutional as not conforming with, or being beyond the authority of, the Sixteenth Amendment. *Brushaber* v. *Un. Pac. R. R., ante,* p. 1. ·

There is no authority for taking taxation of mining corporations out of the rule established by the Sixteenth Amendment; nor is there any basis for the contention that, owing to inadequacy of the allowance for depreciation of ore body, the income tax of 1913 is equivalent to one on the gross product of mines, and as such a direct tax on · the property itself, and therefore beyond the purview of that amendment and void for want of apportionment.

Independently of the operations of the Sixteenth Amendment, a tax on the product of the mine is not a tax upon property as such because of its ownership, but is a true excise levied on the result of the business of carrying on mining operations. *Stratton's Independence* v. *Howbert,* 231 U. S. 399. ·

THE facts, which involve the constitutionality and construction of provisions of the Income Tax Law of 1913, and its application to mining corporations, are stated in the opinion.

*Mr. Charles A. Snow* for appellant:

The Income Tax Law, as applied to mining companies, directly taxes a portion of their principal or capital, with-

out apportionment according to population, and, therefore, is unconstitutional. Direct taxes on principal or capital, not being taxes on income, are not authorized by the Sixteenth Amendment.

*Stratton's Independence*, 231 U. S. 399, which is sole reliance of Government, holds merely that sales of ore do not represent principal exclusively, but include capital, in part, and income, in part, and differs essentially from case at bar.

Net income is the gain or profit derived from the use of capital, without impairment thereof. Unless the principal is left intact, by proper allowances for losses, depreciation and depletion of capital assets, the proceeds from sales of mining products cannot represent "net income" wholly and exclusively. See *Nipissing Mines Case*, 202 Fed. Rep. 803; *Von`Baumbach* v. *Sargent Land Co.*, 207 Fed. Rep. 423; 219 Fed. Rep. 31; *Stevens* v. *Hudson's Bay Co.*, 101 L. T. Rep. 96. Exhaustion of value of ore deposits by mining and sale does not differ essentially from sale of land at a purchase price payable in yearly instalments. *Secretary* v. *Scoble*, 89 L. T. Rep. 1; *Foley* v. *Fletcher*, 3 H. & N. 769. See also *Merchants' Ins. Co.* v. *McCartney*, Fed. Cas. 9,443; *Commonwealth* v. *Central Transp. Co.*, 145 Pa. St. 80; *Gibson* v. *Cooke*, 1 Met. 75.

Mining dividends are distributable, although largely capital, because such action is contemplated by purposes of the charter. *Lee* v. *Neuchatel Co.*, L. R. 41 Ch. Div. 1.

Cases arising under wills or trusts, and involving rights of life tenants in mining properties, have no proper application here. They rest on the terms of the trust. *Daly* v. *Beckett*, 24 Beav. 114; *Eley's Appeal*, 103 Pa. St. 300.

Taxation cases cited have no importance here, as they arise under laws totally different. *Gay* v. *Baltic Mining Co.*, 220 U. S. 107; *Coltness Iron Co.* v. *Black*, L. R. 6 App. Cas. 315; *Commonwealth* v. *Ocean Oil Co.*, 59 Pa. St.

61; *Commonwealth* v. *Penn Gas Coal Co.*, 62 Pa. St. 241.

Depreciation, depletion and losses must be allowed for in any income tax. Unless allowed for, the tax is not limited to income, but also covers a portion of the principal. And this is true, not merely of wasting properties, like mines, but also of all kinds of depreciable property.

The Income Tax Law arbitrarily, capriciously and unequally discriminates between mining companies and all other classes of corporations, without any reasonable basis for distinction or classification. It, accordingly, deprives mining companies of their property without "due process of law," as guaranteed by the Fifth Amendment. The special clause limiting mines to a maximum allowance of five per cent of their annual gross receipts or output, for depletion of ore deposits, is unconstitutional. Or, if the clause is not separable, the entire Income Tax Law is unconstitutional, as applied to mining companies.

As palpably arbitrary classification, this law, as applied to mines, is unconstitutional, because it violates due process of law, as guaranteed by the Fifth Amendment.

The distinction between mining companies and other classes of corporations, for purposes of direct taxation, would afford no reasonable basis for classification. See *Gulf, Colorado &c.* v. *Ellis*, 165 U. S. 150; *Missouri, Kansas & Texas Ry.* v. *Cade*, 233 U. S. 642; *Cotting* v. *Kansas City Stockyards Co.*, 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Southern R. R. Co.* v. *Greene*, 216 U. S. 400; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, distinguished, and see *Smith* v. *Texas*, 233 U. S. 630; *San Bernardino* v. *Southern Pac. R. R.*, 118 U. S. 417; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Michigan Central Railroad* v. *Powers*, 201 U. S. 245; *Ohio Tax Cases*, 232 U. S. 576. Distinctions between mining and other corporations, for purposes of taxation, are merely fanciful.

Mining lands, in no essential respect, differ from farming lands or other forms of real estate.

The discrimination against mines is of an "unusual character" wholly "unknown to the practice of our governments," and is pure favoritism, class legislation and palpably arbitrary classification, resting upon no reasonable basis for distinction.

The act is open to other general constitutional objections, founded on palpably arbitrary discrimination against all corporations.

The tax amounts to double taxation, in case of operating corporations controlled by holding companies.

Under the Fifth Amendment, Congress is prohibited from enacting laws, which are palpably arbitrary and unequal, resting upon no reasonable basis for classification. Such laws deprive a taxpayer of his property without due process of law. The Fifth Amendment, however, allows reasonable classification. Such laws also are void, because they violate the implied limits to the power of taxation which are inherent in our form of government.

The obvious limitations upon the tax powers of Congress are not affected by the Sixteenth Amendment, so far as property taxation is concerned, except that it authorizes direct income taxes, when they are not arbitrary, unequal or oppressive.

The Sixteenth Amendment merely obviated the objection founded on lack of apportionment, leaving open all other constitutional objections to an income tax.

Direct taxation upon incomes must still be imposed subject to the rule of equality and uniformity.

The five per cent clause is separable from remainder of Income Tax law. It may be declared unconstitutional and the remainder of the act allowed to stand. Or the law may be declared void, as applied to mines. *Adams Express Co.* v. *Ohio,* 165 U. S. 194; 166 U. S. 185; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Appeal of Shoemaker,* 106 Pa. St. 392; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226; *Ballard* v. *Hunter,* 204 U. S. 241; *Baltic*

*Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Bank of Columbia* v. *Okely,* 4 Wheat. 235; *Barbier* v. *Connolly,* 113 U. S. 27; *Barrett* v. *Indiana,* 229 U. S. 26; *Beers* v. *Glynn,* 211 U. S. 477; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Berea College* v. *Kentucky,* 211 U. S. 45; Black, Income Tax, §§ 32, 34; Blackstone, Commentaries, Vol. 2, p. 282; Blackstone, Commentaries, Vol. 2, p. 18; *Bradley* v. *Richmond,* 227 U. S. 477; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563; *Buford* v. *Houtz,* 123 U. S. 320; *Caldwell* v. *Fulton,* 31 Pa. St. 475; *Chicago Dock Co.* v. *Fraley,* 228 U. S. 680; *Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Clark* v. *Kansas City,* 176 U. S. 114; Co. Lit. 4 (*a*), 4 (*b*); *Cook* v. *Marshall County,* 196 U. S. 261; Cooley, Const. Law, p. 387; Cooley, Const. Lim., pp. 434, 490; *Coulter* v. *Louisville & N. R. R. Co.,* 196 U. S. 599; *Covington* v. *First National Bank,* 198 U. S. 100; *Cox* v. *Texas,* 202 U. S. 446; *Daly* v. *Beckett,* 24 Beav. 114; *Davidson* v. *New Orleans,* 96 U. S. 97; *Denver* v. *New York Trust Co.,* 229 U. S. 123; *District of Columbia* v. *Brooke,* 214 U. S. 138.

The *Solicitor General* and *Mr. Assistant Attorney General Wallace* for the United States as *amicus curiæ* in support of the decree appealed from.[1]

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

As in *Brushaber* v. *Union Pacific R. R., ante,* p. 1, this case was commenced by the appellant as a stockholder of the Baltic Mining Company, the appellee, to enjoin the voluntary payment by the corporation and its officers of the tax assessed against it under the Income Tax section of the Tariff Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 181. As the grounds for the equitable relief

---

[1] For abstract of argument in this and other cases argued simultaneously herewith, see p. 5, *ante.*

sought in this case so far as the question of jurisdiction is concerned are substantially the same as those which were relied upon in the *Brushaber Case*, it follows that the ruling in that case upholding the power to dispose of that controversy is controlling here and we put that subject out of view.

Further also like the *Brushaber Case* this is before us on a direct appeal prosecuted for the purpose of reviewing the action of the court below in dismissing on motion the bill for want of equity.

The bill averred: "That, under and by virtue of the alleged authority contained in said Income Tax law, if valid and constitutional, the respondent company is taxable at the rate of 1 per cent. upon its gross receipts from all sources, during the calendar year ending December 31, 1914, after deducting (1) its ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties and (2) all losses actually sustained within the year and not compensated by insurance or otherwise, including depreciation arising from depletion of its ore deposits to the limited extent of 5% of the 'gross value at the mine of the output' during said year." It was further alleged that the company would if not restrained make a return for taxation conformably to the statute and would pay the tax upon the basis stated without protest and that to do so would result in depriving the complainant as a stockholder of rights secured by the Constitution of the United States as the tax which it was proposed to pay without protest was void for repugnancy to that Constitution. The bill contained many averments on the following subjects which may be divided into two generic classes: (A) Those concerning the operation of the law in question upon individuals generally and upon other than mining corporations and the discrimination against mining corporations which arose in favor of such other corporations and in-

dividuals by the legislation, as well as discrimination which
the provisions of the act operated against mining corpora-
tions because of the separate and more unfavorable
burden cast upon them by the statute than was placed
upon other corporations and individuals—, averments all
of which were obviously made to support the subsequent
charges which the bill contained as to the repugnancy
of the law imposing the tax to the equal protection, due
process and uniformity clauses of the Constitution. And
(B) those dealing with the practical results on the com-
pany of the operation of the tax in question evidently
alleged for the purpose of sustaining the charge which the
bill made that the tax levied was not what was deemed to
be the peculiar direct tax which the Sixteenth Amend-
ment exceptionally authorized to be levied without ap-
portionment and of the resulting repugnancy of the tax
to the Constitution as a direct tax on property because
of its ownership levied without conforming to the regula-
tion of apportionment generally required by the Constitu-
tion as to such taxation.

We need not more particularly state the averments
as to the various contentions in class (A), as their char-
acter will necessarily be made manifest by the statement
of the legal propositions based on them which we shall
hereafter have occasion to make. As to the averments
concerning class (B), it suffices to say that it resulted
from copious allegations in the bill as to the value of the
ore body contained in the mine which the company worked
and the total output for the year of the product of the
mine after deducting the expenses as previously stated,
that the five per cent. deduction permitted by the statute
was inadequate to allow for the depletion of the ore body
and therefore the law to a large extent taxed not the
mere profit arising from the operation of the mine, but
taxed as income the yearly product which represented
to a large extent the yearly depletion or exhaustion of

the ore body from which during the year ore was taken. Indeed, the following alleged facts concerning the relation which the annual production bore to the exhaustion or diminution of the property in the ore bed must be taken as true for the purpose of reviewing the judgment sustaining the motion to dismiss the bill.

"That the real or actual yearly income derived by the respondent company from its business or property, does not exceed $550,000. That, under the Income Tax, the said company is held taxable, in an average year, to the amount of approximately $1,150,000, the same being ascertained by deducting from its net receipts of $1,400,000 only a depreciation of $100,000 on its plant and a depletion of its ore supply limited by law to 5% of the value of its annual gross receipts and amounting to $150,000; whereas, in order properly to ascertain its actual income $750,000 per annum should be allowed to be deducted for such depletion, or five times the amount actually allowed."

Without attempting minutely to state every possible ground of attack which might be deduced from the averments of the bill, but in substance embracing every material grievance therein asserted and pressed in argument upon our attention in the elaborate briefs which have been submitted, we come to separately dispose of the legal propositions advanced in the bill and arguments concerning the two classes.

*Class A.* Under this the bill charged that the provisions of the statute "are unconstitutional and void under the Fifth Amendment, in that they deny to mining companies and their stockholders equal protection of the laws and deprive them of their property without due process of law," for the following reasons:

(1) Because all other individuals or corporations were given a right to deduct a fair and reasonable percentage for losses and depreciation of their capital and they were

therefore not confined to the arbitrary 5% fixed as the basis for deductions by mining corporations.

. (2) Because by reason of the differences in the allowances which the statute permitted the tax levied was virtually a net income tax on other corporations and individuals and a gross income tax on mining corporations.

(3) Because the statute established a discriminating rule as to individuals and other corporations as against mining corporations on the subject of the method of the allowance for depreciations.

(4) Because the law permitted all individuals to deduct - from their net income dividends received from corporations which had paid the tax on their incomes, and did not give the right to corporations to make such deductions from their income of dividends received from other corporations which had paid their income tax. This was illustrated by the averment that 99 per cent. of the stock of the defendant company was owned by a holding company and that under the statute not only was the corporation obliged to pay the tax on its income, but so also was the holding company obliged to pay on the dividends paid it by the defendant company.

(5) Because of the discrimination resulting from the provision of the statute providing for a progressive increase of taxation or surtax as to individuals and not as to corporations.

(6) Because of the exemptions which the statute made of individual incomes below $4,000 and of incomes of labor organizations and various other exemptions which were set forth.

But it is apparent from the mere statement of these contentions that each and all of them were adversely disposed of by the decision in the *Brushaber Case* and they all therefore may be put out of view.

*Class B.* Under this class these propositions are relied upon:

(1) That as the Sixteenth Amendment authorizes only an exceptional direct income tax without apportionment, to which the tax in question does not conform, it is therefore not within the authority of that Amendment.

(2) Not being within the authority of the Sixteenth Amendment the tax is therefore, within the ruling of *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601, a direct tax and void for want of compliance with the regulation of apportionment.

As the first proposition is plainly in conflict with the meaning of the Sixteenth Amendment as interpreted in the *Brushaber Case*, it may also be put out of view. As to the second, while indeed it is distinct from the subjects considered in the *Brushaber Case* to the extent that the particular tax which the statute levies on mining corporations here under consideration is distinct from the tax on corporations other than mining and on individuals which was disposed of in the *Brushaber Case*, a brief analysis will serve to demonstrate that the distinction is one without a difference and therefore that the proposition is also foreclosed by the previous ruling. The contention is that as the tax here imposed is not on the net product but in a sense somewhat equivalent to a tax on the gross product of the working of the mine by the corporation, therefore the tax is not within the purview of the Sixteenth Amendment and consequently it must be treated as a direct tax on property because of its ownership and as such void for want of apportionment. But aside from the obvious error of the proposition intrinsically considered, it manifestly disregards the fact that by the previous ruling it was settled that the provisions of the Sixteenth Amendment conferred no new power of taxation but simply prohibited the previous complete and plenary power of income taxation possessed by Congress from the beginning from being taken out of the category of indirect taxation to which it inherently belonged and being placed

in the category of direct taxation subject to apportion-
ment by a consideration of the sources from which the
income was derived, that is by testing the tax not by
what it was—a tax on income, but by a mistaken theory
deduced from the origin or source of the income taxed.
Mark, of course, in saying this we are not here consider-
ing a tax not within the provisions of the Sixteenth
Amendment, that is, one in which the regulation of ap-
portionment or the rule of uniformity is wholly negligible
because the tax is one entirely beyond the scope of the
taxing power of Congress and where consequently no
authority to impose a burden either direct or indirect
exists. In other words, we are here dealing solely with
the restriction imposed by the Sixteenth Amendment on
the right to resort to the source whence an income is
derived in a case where there is power to tax for the
purpose of taking the income tax out of the class of in-
direct to which it generically belongs and putting it in
the class of direct to which it would not otherwise belong
in order to subject it to the regulation of apportionment.
But it is said that although this be undoubtedly true as a
general rule, the peculiarity of mining property and the
exhaustion of the ore body which must result from work-
ing the mine, causes the tax in a case like this where an
inadequate allowance by way of deduction is made for
the exhaustion of the ore body to be in the nature of
things a tax on property because of its ownership and
therefore subject to apportionment. Not to so hold, it is
urged, is as to mining property but to say that mere form
controls, thus rendering in substance the command of
the Constitution that taxation directly on property be-
cause of its ownership be apportioned, wholly illusory or
futile. But this merely asserts a right to take the taxa-
tion of mining corporations out of the rule established by
the Sixteenth Amendment when there is no authority
for so doing. It moreover rests upon the wholly fallacious

assumption that looked at from the point of view of substance a tax on the product of a mine is necessarily in its essence and nature in every case a direct tax on property because of its ownership unless adequate allowance be made for the exhaustion of the ore body to result from working the mine. We say wholly fallacious assumption because independently of the effect of the operation of the Sixteenth Amendment it was settled in *Stratton's Independence* v. *Howbert,* 231 U. S. 399, that such a tax is not a tax upon property as such because of its ownership, but a true excise levied on the results of the business of carrying on mining operations (pp. 413 *et seq.*)

As it follows from what we have said that the contentions are in substance and effect controlled by the *Brushaber Case* and in so far as this may not be the case are without merit, it results that for the reasons stated in the opinion in that case and those expressed in this, the judgment must be and it is

*Affirmed.*

Mr. Justice McReynolds took no part in the consideration and decision of this case.