**NEW CREEK CO. v. LEDERER, Collector of Internal Revenue.**

(District Court, E. D. Pennsylvania. March 26, 1923.)

No. 8468.

**Internal revenue ⬥�longdash⟩7—Income tax; deduction for depletion in case of mine.**

Income Tax Act 1916, § 12, as amended (Comp. St. 1918, § 6336*l*), allows a deduction in case of mines of a reasonable allowance for depletion, not to exceed the market value in the mine of the product thereof which has been mined and sold during the year, under rules prescribed by the Secretary of the Treasury, provided that, if the mine was owned prior to March 1, 1913, when the allowance shall equal its fair market value on that date no further allowance shall be made. *Held*, that regulation No. 172, which in case of a coal mine owned by the taxpayer prior to March 1, 1913, fixes the allowance per ton by dividing the fair market value of the mine on that date by the estimated number of tons in place on that date, is reasonable and valid, and that it applies to royalties received by an owner who leases his mine for operation by the lessee.

At Law. Action by the New Creek Company against Ephraim Lederer, Collector of Internal Revenue. On case stated. Judgment for defendant.

Evans, Bayard & Frick, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Dist. Atty., of Philadelphia, Pa., and J. Paul MacElree, Asst. U. S. Dist. Atty., of Westchester, Pa.

THOMPSON, District Judge. The plaintiff sues to recover from the defendant the sum of $5,952.80, with interest from July 19, 1920, income and excess profits tax for 1917, paid under protest, and alleged to have been unlawfully exacted. The facts not being in dispute, the parties have set them out in a case stated.

The plaintiff in 1851 became the owner of coal lands situate in what are now Mineral and Elk counties, W. Va. On March 1, 1913, it was the owner of part of that land which had been found to be underlaid with coal. The land was leased for coal mining on a royalty basis, and during 1917 93,515.18 tons were mined, for which the plaintiff received in royalties $37,565.25. In making its return for income tax, the plaintiff charged that entire amount to depletion. The plaintiff had no interest in the mine equipment, and the entire plant and machinery and all labor employed for the operation of the mines were furnished by the lessees. The fair market value of the coal land as of March 1, 1913, was $199,875, and the quantity of unmined coal underlying the land, estimated as of March 1, 1913, was 9,057,640.32 tons.

The Commissioner of Internal Revenue held that, under the provisions of the Revenue Act of 1916, as amended by the Revenue Act of 1917 (Comp. St. 1918, § 6336*l*), the deduction for depletion allowable per ton mined was represented by the quotient found by dividing the total estimated number of tons of unmined coal on March 1, 1913, into the sum representing the fair market value of the lands as of that date, or $.022067 per ton. On that basis the plaintiff was al-

⬥⟨longdash⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lowed for depletion in 1917 the sum of $2,063.60, and the Commissioner thereupon assessed additional income and excess profits tax, amounting to $5,052.87. That sum was paid by the plaintiff under protest on July 19, 1920. Claim for refund was duly made and rejected, and suit brought.

The Revenue Act of 1916 provides as follows:

"Sec. 12 (a). In the case of a corporation, * * * such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

"Second. * * * (b) In the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made, such reasonable allowance to be made * * * (b) under rules and regulations to be prescribed by the Secretary of the Treasury: Provided, that when the allowance authorized * * (b) shall equal the capital originally invested, or in case of purchase made prior to March first, nineteen hundred and thirteen, the fair market value as of that date, no further allowance shall be made.' * * *" Comp. St. § 6336l.

Under the authority of the act, the Secretary of the Treasury prescribed rules and regulations, the substance of which, as set forth in articles 171 and 172, permit the taxpayer to deduct, in the year in which mined, the actual market value as of March 1, 1913, of the coal mined during the taxable year, based upon its proportion of the value of the entire estimated quantity in place as of March 1, 1913.

It is provided in article 172 of the regulations that the value as of March 1, 1913,

"must be determined upon the basis of the salable value en bloc as of that date of the entire deposit of minerals contained in the property owned, exclusive of the improvements and development work; that is, the price at which the natural deposits or mineral property as an entirety in its then condition could have been disposed of for cash or its equivalent.

"The en bloc value having been thus ascertained, an estimate of the number of units (tons, pounds, etc.) should be made. The en bloc value divided by the estimated number of units in the property will determine the per unit value, or amount of capital applicable to each unit, which, multiplied by the number of units mined and sold during any one year, will determine the sum which will constitute an allowable deduction from the gross income of that year on account of depletion.

"Deductions computed on a like basis may be made from year to year during the ownership under which the value was determined until the aggregate en bloc value as of March 1, 1913, of the mine or mineral deposits shall have been extinguished, after which no further deduction on account of depletion with respect to this property will be allowed to the individual or corporation under whose ownership the en bloc value was determined.

* * * * * * * * * *

" * * * The value determined and set up as of March 1, 1913, or the cost of the property if acquired subsequent to that date will be the basis for determining the depletion deduction for all subsequent years during the ownership under which the value was fixed, and during such ownership there can be no revaluation for the purpose of this deduction if it should be found that the estimated quantity of the mineral deposit was understated at the time the value was fixed or at the time the property was acquired."

The plaintiff contends (1) that these rules and regulations do not properly apply to the owner leasing the land on a royalty basis, but only to an owner who himself mines and recovers the coal; (2) that, if they do apply, they are illegal and void, because, under the rules

and regulations, a reasonable allowance for depreciation cannot be fixed as required by the Revenue Act; (3) that the actual depletion in any year is the amount of royalty the mine owner receives, and that it is unnecessary and unreasonable to resort to any artificial method of arbitrary valuation such as is described in the regulations in order to determine depletion.

The plaintiff contends that the royalty paid for each ton mined represented the value of the coal in the ground when it was mined; that therefore it had no element of profit in it, but represented merely the naked value of coal which was part of the land at the moment when it was removed therefrom; that the royalties were therefore principal, and not income. The question whether the proceeds of minerals taken out of the land by mining constitute income has been decided adversely to the plaintiff's contention in cases arising under revenue laws passed prior to the adoption of the Sixteenth Amendment. The Corporation Excise Tax Act of 1909 (36 Stat. 11, § 38) laid a tax with respect to the carrying on or doing of business by corporations to be measured by their net income after certain deductions. It was under consideration in the case of Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285. It was there held that, in fixing the income by which the excise on conducting business should be measured, Congress has power to fix the gross income, even though such income involves a wasting of the capital, as in mining ores, and that the proper method of computing depreciation by reason of taking ore from the premises of a mining corporation is not governed by the rules applicable to the liability of trespassers for taking ore.

In that case the contention of the plaintiffs was that the depreciation was the difference between the gross proceeds of the sales of ores during the year and the moneys expended in extracting, mining, and marketing the ores. The tax was assessed against a corporation owning and operating its own mines, and the contention of the plaintiff was that the actual value of the ore extracted after deducting all the expenses of operation and labor was not a proper basis for a method of taxation, because the company was merely occupied in converting its capital assets from one form into another. That is essentially the contention of the plaintiff in this case and, in view of the decision in Stratton's Independence followed by Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460, and Goldfield Consolidated Mines Co. v. Scott, 247 U. S. 126, 38 Sup. Ct. 465, 62 L. Ed. 1022, the question is no longer open to discussion.

Under the Revenue Act of 1916, the purpose of Congress was to tax the profits from mining; that is, the income derived from mining after deducting the value of the ore in place, and, if owned prior to March 1, 1913, the market value as of that date. This same principle is applied in relation to other income, such as profits upon sales of land, stocks, and bonds, or other personal property.

I can see no substantial difference, as taxable income, between that derived from royalties and that derived from the proceeds of sale of minerals taken out of the land by the owner. In the latter

case, the owner has not separated the mineral rights from the ownership of the land, while in the former case he has transferred those rights to the use of another subject to payment of royalties. When he mines the ore himself, he separates the mineral from the land, and receives as the proceeds thereof the entire sales price of the ore, and, after deducting the cost of mining, transportation, and sale of the ore, he has left its value as it was taken from the ground. When he executes a lease of the mining rights to another he receives the same thing; that is, the net present value of the ore, the other expenses being paid by the lessees. In either case, the net present value of the ore is subject for taxation purposes to a deduction of its value in the land, as of March 1, 1913. The methods applied by the regulations of the Secretary of the Treasury for arriving at this figure as the net income are not in any manner inconsistent with the provisions of the Revenue Act, and I am unable to agree with the contention of the plaintiff that they are arbitrary or unreasonable. Upon the facts agreed upon in the case stated, the plaintiff has not, in my opinion, set up a good cause of action.

Judgment may be entered for the defendant, with costs.