**NEW CREEK CO. v. LEDERER, Collector of Internal Revenue.**

(Circuit Court of Appeals, Third Circuit. February 8, 1924.)

No. 3014.

**1. Internal revenue ⬤⟞7—Deductions allowed in computing income tax for depletion of mine.**

Income Tax Act 1916, § 12 (Comp. St. § 6336l), allows a deduction in case of mines of a reasonable allowance for depletion, not to exceed the market value in the mine of the product thereof which has been mined and sold during the year, under rules prescribed by the Secretary of the Treasury, provided that, if the mine was owned prior to March 1, 1913, when the allowance shall equal its fair market value on that date, no further allowance shall be made. *Held*, that Regulation No. 33, arts. 171 and 172, which in case of a coal mine owned by the taxpayer prior to March 1, 1913, fixes the allowance per ton by dividing the fair market value of the mine on that date by the estimated number of tons in place on that date, is not unreasonable, and applies to royalties received by owner, who leased his mine for operation by lessee.

**2. Internal revenue ⬤⟞7—Proceeds from sale of mined coal held gross income.**

The proceeds from the sale of mined coal is gross income subject to taxation.

**3. Internal revenue ⬤⟞7—Right to deduct from gross income for depletion of mine held solely statutory.**

Whatever right a corporate mine-owning taxable has to deduct from the gross income of its mine anything for depreciation or depletion is solely statutory.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by the New Creek Company against Ephraim Lederer, Collector of Internal Revenue for the First District of Pennsylvania. Judgment for defendant (288 Fed. 99), and plaintiff brings error. Affirmed.

James Wilson Bayard and Evans, Bayard & Frick, all of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty., of Philadelphia, Pa., and J. Paul McElree, Asst. U. S. Atty., of Westchester, Pa., and Preston Carter Alexander, of Washington, D. C., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. [1] The question in this case concerns the validity of rules and regulations prescribed by the Secretary of the Treasury for the enforcement of the income and excess profits tax provisions of the Revenue Act of September 8, 1916, amended by the Act of October 3, 1917 (Comp. St. 1918, § 6336⅜ et seq.) as they affect an allowance in a tax return for depletion of a mine where coal had been mined on royalties. The pertinent facts, submitted in an agreed statement, are briefly these:

In 1851 the plaintiff corporation purchased coal lands in what is now the State of West Virginia. Of these lands it owned, on March 1, 1913, several tracts underlaid with merchantable coal of an estimated load of 9,057,640.32 tons and of a value of $199,875.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

During the year 1917 the plaintiff's mines were operated on royalties; the amount of coal mined was 93,515.18 tons and the amount of royalties received was $37,565.25. These royalties represented the exact market value in the mines of the coal raised and sold during that year. In making its income tax return for 1917 the plaintiff included in its gross income the entire amount of its coal royalties, but immediately deducted the whole of this sum as a depletion of its capital asset.

This return showed no excess profits tax to be due but showed to be due an income tax of $88.12. This the plaintiff paid. Thereafter, the Commissioner of Internal Revenue notified the plaintiff that it was not entitled to claim a credit for depletion to the full amount of its royalties, but was entitled to claim only a portion thereof reckoned on a per ton basis ascertained by dividing the sum representing the fair market value of the lands on March 1, 1913 ($199,875) by the total estimated number of tons of coal underlying the lands on that date (9,057,640.32 tons). This calculation gave a per ton unit of $.022,067, which, when multiplied by the 93,515.18 tons mined, showed a total mine depletion of $2,063.60 for the year. Based on this adjustment of the depletion allowance, the Commissioner assessed an additional income and excess profits tax of $5,952.87. The plaintiff paid this sum under protest and, after its claim for refund had been rejected, instituted this action to recover the same.

At the trial the parties took wholly opposite positions. The plaintiff corporation contended that the coal before it was mined was capital; that royalties for coal mined were capital converted into another form; and, representing the precise depletion of the mine, these royalties were not income and therefore were not subject to assessment for an income tax, and that in consequence, it, the plaintiff, would not be liable for taxes under the act until its capital in coal reserves had been exhausted, and then, and not until then, would the coal that remained and was thereafter mined be income. The defendant collector contended that royalties represented both capital and income and that the allowance for capital depletion which the statute authorized was to be determined by the value in the ground of each ton of coal on March 1, 1913, (reckoned as before stated) multiplied by the number of tons mined in the year for which the tax was payable. The District Court sustained the collector's position and, accordingly, entered judgment in his favor. 288 Fed. 99. The coal company sued out this writ of error.

The plaintiff stated the question involved in this case to be this:

"On what basis should depletion allowance for a mine be fixed with respect to ore mined in 1917 on royalty?"

Or, as again stated by the plaintiff:

"Whether under any statutory provision these royalties, which were in the nature of principal, became taxable as income and, if so to what extent?"

We think the true question is whether the rule prescribed by the Secretary of the Treasury, under authority of the statute, assured to the plaintiff the "reasonable allowance for depletion" which the

statute intended it shall have in making an income and excess profits tax return for coal mined on royalties? Our answer is based on the following reasoning:

[2, 3] It should first be noted that we are dealing with a revenue act—the Revenue Act of 1916, now superseded by later acts. Under this act taxes were assessed on net income ascertained by deducting specified items from gross income. For purposes of taxation it has been held both in England and in this country that the product of a mine is a proper subject of taxation under income tax laws, notwithstanding the peculiarity that such a product is never income in the sense of increment and is always capital in the sense that it is something which is not produced but is always in being, and that its withdrawal and sale cause a corresponding depletion in the load and in the value of the mine. Keeping in view that we are dealing with a revenue act that called for a yearly tax on yearly income and embraced the product of mines as a subject of taxation, we start with the proposition, which we think is no longer open to question, that the proceeds from the sale of mined coal is gross income subject to taxation. We then come to the proposition that the taxable had no inherent right to deduct therefrom the capital cost of the coal mined, either under the head of deterioration or depletion. See the principle in Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285; VonBaumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460; Goldfield Consol. Mines Co. v. Scott, 247 U. S. 126, 38 Sup. Ct. 465, 62 L. Ed. 1022; United States v. Biwabik Mining Co., 247 U. S. 116, 38 Sup. Ct. 462, 62 L. Ed. 1017; Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546; Doyle v. Mitchell Brothers Company, 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054. Whatever right a corporate mine-owning taxable had to deduct from the gross income of its mine anything for depreciation or depletion came to it solely by virtue of the statute under which the tax was assessed. Therefore, we next inquire what allowance for capital depletion did the Revenue Act of 1916 give a taxable? This act provided (Section 12 [Comp. St. § 6336l]) that income and excess profits taxes shall be levied against "net income" which "shall be ascertained by deducting from the gross amount of its income received within the year from all sources" expenses of operation and maintenance, losses not compensated by insurance and "in the case of mines *a reasonable allowance for depletion* thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computation are made." Therefore, it appears that the act allowed the taxable a deduction for depletion of the corpus or capital of the property. But how was it to be arrived at? Clearly, Congress did not know. And this is entirely natural because of the variable factors entering inevitably into such problems as they arise with reference to mines under varying conditions. Therefore, Congress said that this reasonable allowance for capital depletion should "be made * * * under Rules and Regulations to be prescribed by the Secretary of the Treasury," with the limitation bearing both on the right of the taxable and the authority of the Secretary of the

Treasury, "that when the allowance authorized shall equal the capital originally invested, or in case of purchase made prior to March first, nineteen hundred and thirteen, [shall equal] the fair market value as of that date, no further allowance shall be made."

Obviously, this statutory delegation of authority to the Secretary of the Treasury was made because of the peculiar nature of mining property as a subject of taxation. The value of such property is usually in the mines which lie within it. Their mineral extent and money value are factors impossible of precise ascertainment. Yet, on these factors any allowance for depletion of capital or the corpus must be based. With this duty imposed upon him by the act, the Secretary of the Treasury promulgated Rules and Regulations No. 33. Those affecting this case are Articles 171 and 172. In framing these rules the Secretary of the Treasury first inserted the provisions of the statute providing a reasonable allowance for mine depletion and then prescribed, as stated before, that the allowance for depletion shall be based on the multiplication of the tons mined in a tax year by a per ton unit of capital depletion which shall be arrived at by dividing the capital originally invested in the mine (or in case the mine was purchased prior to March 1, 1913, then by dividing its fair market value as of that date) by the number of tons of ore in the mine, also estimated as of that date. The plaintiff says that is not the reasonable allowance for mine depletion which the statute gave it, but on the contrary, the allowance is unreasonable because it is ascertained in part on estimated and therefore on uncertain factors, and that, in consequence, the net income on which it was required to pay a tax was equally uncertain and therefore an unjust basis of taxation. On the contention that it was entitled to an allowance precisely equal to mine depletion the plaintiff rests its claim to deduct for depletion, year by year, the whole of its royalties until its original investment, or the fair market value of its ore as capital, has been exhausted. We are not persuaded by this contention because the plaintiff is only entitled to the allowance which the statute gave it and the statute did not give it an allowance for the precise depletion of its mine. It gave it a reasonable allowance for depletion, having regard, of course, to the impossibility of absolute precision in estimating depletion of a taxable asset of the character of a mine. If the plaintiff is right in its contention that it can deduct from its gross income (in this case royalties) all of its royalties in the form of depletion of capital until its whole capital is exhausted, its income from mines, admittedly a proper subject of taxation, would escape taxation until its capital had been worked out and nothing was left but profits. This could not have been the intention of Congress in passing the act for the raising of revenue presently. If this had been its intention, the revenue contemplated by the act would not be available, in many instances, for years, decades and centuries. For example, these properties were purchased in 1851, portions were sold and the remaining two or three thousand acres have not yet been mined to exhaustion and may not be for another seventy-three years. One corporation in this country owns anthracite mines which, it is said, will not be exhausted for two hundred years.

Under this act Congress evidently intended that the Government should exact an income tax yearly and, correspondingly, the taxable was given a right to demand an allowance for capital depletion yearly. On the theory of the statute, as we read it, depletion allowance was intended as a return to the tax payer of the original cost of the coal so that he may be taxed not on the whole of its sale price in the event that he is an operating owner, or on the full amount of royalties if he is a lessor, but that he may be taxed on the difference between the cost (capital) and the sale price or royalties received (income). (Of course in estimating income on sale price other factors enter.) If he were allowed to deduct in each year the full amount of the sale price or the full amount of the royalties received (as the plaintiff here claims), the practical effect would be that he would, for many years, pay no tax at all, and this regardless of the fact that the total sale price (or total royalties) may, ton by ton, show a profit over the original capital cost. It is this profit or net income annually earned which the act taxed annually. And in this regard we see no distinction in the application of the principle to a mine owner whose income is royalties and to a mine owner whose income is derived from working the mines and selling the coal. The only difference is that in the latter more factors enter into the calculation. The principle is the same.

We do not find that the Rules and Regulations prescribed by the Secretary of the Treasury for the enforcement of the allowance for depletion under the provisions of the Revenue Act of 1916 are, in view of the subject matter of taxation, unreasonable, or that by these rules the taxable was deprived of the deduction which the statute allowed. Therefore, we affirm the judgment of the court below.

BUFFINGTON, Circuit Judge, took no part in the consideration and decision of this case.