**ROSENBERGER v. McCAUGHN, Collector of Internal Revenue.**

Circuit Court of Appeals, Third Circuit. March 3, 1928.

No. 3700.

1. **Internal revenue ⊸7(3)—Rents received under 99-year coal lease held to be taxable income in part (Revenue Act 1916, § 2, subd. [a], and § 5, subd. [a], par. 8 [Comp. St. §§ 6336b, 6336e]; Revenue Act 1918, § 213, and § 214, subd. [a], par. 10 [Comp. St. §§ 6336⅛ff, 6336⅛g]).**

Where owner of land demised to coal company all coal under land and right to mine it for term of 99 years in consideration of monthly rents reckoned on coal raised and price realized, part of such rent payments represented capital as standing in place of coal, but part represented income within Revenue Act 1916, § 2, subd. (a), and § 5, subd. (a), par. 8 (Comp. St. §§ 6336b, 6336e) and Revenue Act 1918, § 213, and § 214 subd. (a), par. 10 (Comp. St. §§ 6336⅛ff, 6336⅛g), notwithstanding that in state courts such transaction is deemed sale of coal in place.

2. **Courts ⊸367(5)—In determining whether rent under 99-year coal lease was taxable income, federal court is not bound by state rule that such lease is in law a sale.**

In determining whether rents from 99-year coal lease represented taxable income, federal court is not bound to follow state court rule that such lease is in law sale of coal in place, under which payments would be deferred payments of purchase price.

3. **Internal revenue ⊸38(16)—In absence of complaint in pleadings or assignments as to calculation of income included in rent payments, court assumes calculation was proper (Revenue Act 1916, as amended [Comp. St. § 6336a et seq.]).**

Where plaintiff, in action to recover amounts exacted as additional taxes under Revenue Act 1916 (39 Stat. 756, 757), as amended by Revenue Act 1917 (40 Stat. 300, 329) and Revenue Act 1918 (Comp. St. § 6336a et seq.), attacked in brief calculation of income included in rent payments under 99-year lease, but did not question such calculation in pleadings or in assignments of error, reviewing court will assume that separation of capital from income in such payments was properly made.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Kate W. Rosenberger against Blakely D. McCaughn, Collector of Internal Revenue. Judgment for defendant (20 F. [2d] 139), and plaintiff brings error. Affirmed.

Pierce Archer, Jr., and W. Nelson L. West, both of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty. of Philadelphia, Pa. (C. M. Charest and T. H. Lewis, Jr., both of Washington, D. C., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Kate W. Rosenberger brought this suit in the District Court to recover amounts exacted as additional taxes for the years 1917 and 1918 under provisions of the Revenue Act of 1916 (39 Stat. 756, 757), as amended by the Revenue Act of 1917 (40 Stat. 300, 329), and the Revenue Act of 1918 (40 Stat. 1057, 1065 [Comp. St. § 6336a et seq.]), respectively. The court, on an affidavit of defense in the nature of a demurrer filed to the plaintiff's statement of claim, gave judgment for the defendant. The plaintiff then sued out this writ of error. The facts, admitted by the pleadings, are as follows:

In 1881, Francis Weiss, owning a tract of land in Luzerne county, Pennsylvania, underlaid with coal, entered into an agreement with the Alden Coal Company, a corporation, whereby, in consideration of monthly rents reckoned on coal raised and price realized at the breaker, he demised to the company all the coal in the veins with the right to enter upon the land and carry on mining for a term of ninety-nine years. In 1888, Weiss died. By his will he directed his trustees to collect the monthly rents due his estate under the lease and pay them to his seven children in equal parts during their respective lives, with remainders over, and on the expiration of the term, or the earlier exhaustion of the veins, to sell and convey the land for sums which thereafter should form a part of his residuary estate. During the years 1917 and 1918 the trustees received the rents and in the annual distributions made payments to the plaintiff which she omitted from her tax returns for those years. The Commissioner of Internal Revenue, on review, included them in a new computation and increased her net taxable income by that portion of the payments made to her which represented the difference between the total amount she received and the capital value as of March 1, 1913, according to the rule for determining income from mining laid down in New Creek Co. v. Lederer (C. C. A.) 295 F. 433, and assessed additional taxes.

[1] This case had its rise in the tax problem—at one time troublesome to Congress and later troublesome to the courts—of separating capital from income in gross returns from mining minerals, a part of which, from the very nature of the source, is always capital and the balance—whatever the amount

and however determined—is income. New Creek Co. v. Lederer (C. C. A.) 295 F. 433, 435. The applicable sections of the cited revenue acts addressed to that problem (section 2 (a), section 5 (a) 8 of the Act of 1916 [Comp. St. § 6336b, 6336e], and sections 213, 214, subd. a (10), of the Act of 1918 [Comp. St. §§ 6336⅛ff, 6336⅛g]) provided that net income shall include "gains, profits, and income * * * from * * * businesses, trade, commerce, or * * * dealings in property, * * * growing out of the ownership or use of or interest in real or personal property, also from interest, rent * * * or gains or profits and income derived from any source whatever;" subject only to certain deductions, among which, in the case of mines, is a reasonable allowance for depletion.

Reading these provisions on the transaction of her father, from which for thirty years she had received large payments, the plaintiff maintains that the sums so received were neither income derived from the use of capital (Heiner, Collector, v. Beatty [C. C. A.] 17 F.[2d] 743), nor income from conversion of capital assets (Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305), nor income in any other sense of the revenue acts, but were in fact and law deferred payments of the purchase price in a sale of her father's property.

Although the instrument by which Weiss gave another a right to enter upon his land and raise and sell the underlying coal is entitled a lease, by which in terms he demised named premises for a term on fixed rents with the right of distress reserved in the event of a breach of the rent covenant, and contains the legal characteristics of a demise and none of the characteristics of alienation, the plaintiff says, quite correctly, that under a long line of Pennsylvania decisions, of which the leading ones are Sanderson v. Scranton, 105 Pa. 469, and Hosack v. Crill, 18 Pa. Super. Ct. 90, an instrument such as this, though nominally a lease, is in law a sale of coal in place. She maintains, therefore, that this rule of Pennsylvania property laid down by the highest court of that state is binding on federal courts (Bucher v. Cheshire Realty Co., 125 U. S. 583, 8 S. Ct. 974, 31 L. Ed. 795; Pennsylvania v. Wheeling & Belmont Bridge Co., 13 How. 518, 14 L. Ed. 249), and operates to exempt the payments in question from taxation under federal revenue acts.

[2] It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills (De Vaughn v. Hutchinson, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827); but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.

True, state decisions sometimes control federal legislation, for instance, in determining a deduction allowed by the federal estate tax, but that is because of the express provision—or permission—of the federal act which authorizes deduction of such charges as "are allowed by the laws of the jurisdiction * * * under which the estate is being administered." Lederer v. Northern Trust Co. (C. C. A.) 262 F. 52. But whether the federal government is limited in its selection of subjects for taxation by rules of state courts in respect to property within the state's jurisdiction is another matter and it is one on which the Supreme Court in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 518, 37 S. Ct. 201, 61 L. Ed. 460, did not feel called upon to pass, although the question there, like the one here, was whether royalties or rents were income, and the mere following of the state rule would have been an easy way to decide the question. In that case a Minnesota contract of "lease" substantially like the Pennsylvania contract of "sale" in this case was under consideration. That contract of lease, as the Supreme Court noted, was of a class adjudged by the courts of Minnesota and other states to be a lease as distinguished from the opposite holding by Pennsylvania courts that it is a sale. After quoting the reasoning of Minnesota courts on such instruments, the Supreme Court said in respect to its duty to follow the state rule:

"These conclusions of the Supreme Court of Minnesota are not only made concerning contracts in that state, such as are here involved, but are supported by many authorities. Ordinarily, and as between private parties, there is no question of the duty of the federal court to follow these decisions of the Minnesota Supreme Court, as a rule of real property long established by state decisions. * * * Whether in considering this federal statute we should be constrained to follow the established law of the state, as is contended by the government, we do not need to determine. The decisive question in this case is whether the payments made as so-called royalties amount to income so as to bring such payments within the scope of the Corporation Tax Act of 1909 [36 Stat. 112]."

[3] Such being the question, the Supreme

Court itself construed the instrument there in question in order to determine whether the payments that were made under it were proceeds of sale, capital or income. Wholly aside from the construction which the Minnesota courts had placed upon instruments of that kind and solely because of the nature of the payments themselves, the Supreme Court, as we read its opinion, held that the instrument there in question did not effect a sale of the property, that is, of the ore in place (United States v. Biwabik Mining Co., 247 U. S. 116, 126, 38 S. Ct. 462, 62 L. Ed. 1017), and that the moneys derived from mining and paid under the instrument were not converted capital, but were royalties or rents, and as such were income, proper to be included in measuring taxes under the applicable revenue act, within the rule of Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285, and Stanton v. Baltic Mining Co., 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546. Reverting to the plaintiff's contention that all payments she had received under the instrument here in question were tax free because they were part payments of the purchase price of property sold prior to March 1, 1913, still—always keeping in view the nature of mining, the source of the proceeds—we think each payment represented in some measure both capital and increment, capital because it stood in the place of coal and increment because in the payments running through ninety-nine years interest on the capital must inevitably have been included, and that this increment or interest was a gain "derived" within the generalization of the statute "from any source whatever" and was income in substantially the sense of New Creek Co. v. Lederer (C. C. A.) 295 F. 433. The plaintiff can very properly demand that the capital included in her proceeds from mining shall not be taxed. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054; New Creek Co. v. Lederer, supra. But when the capital in the proceeds has been determined and set aside the balance is income and is the very thing on which the government lays its hand and exacts a tax. Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285; Stanton v. Baltic Mining Co., 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546; Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; United States v. Biwabik Mining Co., 247 U. S. 116, 125, 126, 38 S. Ct. 462, 62 L. Ed. 1017; Goldfield Consolidated Mines Co. v. Scott, 247 U. S. 126, 38 S. Ct. 465, 62 L. Ed. 1022. Though in her briefs the plaintiff

attacks the calculation of income thus included in the payments, nowhere in her pleadings below or in her assignments of error here has she questioned the calculation. We must therefore assume, following, as the Commissioner did, the rule of New Creek Co. v. Lederer, supra, that the separation of capital from income was properly made and that the income found and included as net taxable income was properly determined and taxed.

The judgment of the District Court is affirmed.