634

## Frank Lyons, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 11386.   Promulgated April 19, 1948.

*A. H. Ganger, Esq.,* for the petitioner.
*Howard M. Kohn, Esq.,* for the respondent.

636

638

OPINION.

VAN FOSSAN, *Judge*: In the first issue the petitioner contends that in computing his loss on the "pulling" or abandonment of his oil wells, such loss must not be reduced by the amount of the depletion allowable thereon. He bases his position on the argument that "Congress intended this tax free return (a return of capital in excess of the statutory depletion allowance of 27½ per cent, if such excess occurs) by allowance of depletion, as an incentive payment to continue drilling operations, and that if the excessive depletion in the circumstances assumed above is not used to determine a gain when the well is pulled, then the depletion in the actual circumstances herein presented should not be used in determining the amount of loss incurred in pulling or abandoning the wells in question." (Parentheses added.)

The petitioner elected to capitalize his intangible costs and has already received the benefit of the 27½ per cent depletion allowance in accord with the provisions of section 114 (b) (3) of the Internal Revenue Code.[1] His claim that no adjustment should be made for depletion allowed or allowable, whether the intangible drilling costs were capitalized or not, is answered by the requirements of section 113 (b) (1) (B).[2]

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \* \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the

The terms of section 113 (b) (1) (B) are unmistakably clear. Depletion is specifically mentioned [to the extent allowed (but not less than the amount allowable)] and no reference or exception is made to the peculiar type of depletion allowed in section 114 (b) (3) to producers of oil and gas. The petitioner's theory is that Congress made a gratuitous allowance of the annual depletion of 27½ per cent in order to encourage drilling operations and that this "tax free return" carries through all phases of taxation.

We do not so read the statutes. The situation is clarified and our interpretation is supported by Senate Report No. 665 (Revenue Bill of 1932), 72d Cong., 1st sess., p. 29, which reads as follows:

The requirement in subparagraph (B) of the House bill that the adjustment for depletion should be computed without regard to discovery value or percentage depletion is eliminated in the bill as to all adjustments in respect of the taxable year 1932 and subsequent years. Your committee believes it only fair that *the basis of the property should be adjusted to the full extent of the depletion allowances, without regard to the method by which these allowances are determined.* In view of the substantial change from the existing law in this respect, your committee is of the opinion that it should not disturb the depletion adjustments in respect of years prior to 1932. [Emphasis supplied.]

The Commissioner correctly applied the statute and regulations to the facts at hand. The respondent's action in the first issue is sustained.

The second issue presents the single question whether the leasehold or each individual well drilled thereon is the proper unit for determining and computing the gain or loss upon the "pulling" or abandonment of a well. The petitioner asserts that he has segregated all items of capital and operating costs properly chargeable to each well. He has given due credit for all production therefrom and has made corresponding entries on his books reflecting such appropriate charges and credits. The controversy is whether the single well or the leasehold is the "property" described in section 114 (b) (3).

The petitioner relies largely on section 19.23 (m)–1 (*i*) of Regulations 103 [3] and understands it to mean that his interest in each well

---

amount allowable) under this chapter or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value or a percentage of income, then the adjustment for depletion for such year shall be based on the depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income.

[3] Regulations 103. Sec. 19.23(m)–1. *Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.*—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) A "mineral property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(i) "The property," as used in section 114(b) (2), (3), and (4) and section 19.23(m)–1 to 19.23(m)–19, inclusive, means the interest owned by the taxpayer in any mineral property. The taxpayer's interest in each separate mineral property is a separate "property": but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single "property", provided such treatment is consistently followed.

\*　　\*　　\*　　\*　　\*　　\*　　\*

may and should be considered a single "property" as permitted by the regulations, since he has so consistently considered his interest and has so treated on his books all transactions relating to each well.

We do not agree. Petitioner's interpretation is not a reasonable use of the term "property." It is contrary to the definition found in the regulations and in force for many years. It matters not that the petitioner has chosen to keep separate all transactions relating to each well. If the taxing statute and pertinent regulations do not enable him to report his gains and losses on that basis, he cannot do so. The interpretation proposed by petitioner would entail impossible administrative difficulties if applied generally.

The primary question whether, in the premises, the leasehold or the operation of a single well thereon is the proper basis for computing gain or loss on the abandonment of each individual well drilled on the leased land, and thus whether depletion may be allowed with respect to each well or to the entire leasehold, has been heretofore considered. In *William H. Cree*, 47 B. T. A. 868, we reviewed the application of section 114 (b) (3) of the 1938 Act (the same as the corresponding section in the Internal Revenue Code) to the ownership of two oil leaseholds and certain rights to working interests in wells drilled on each lease. The petitioner asked that each well be considered a separate property and that depletion be computed on the operation of each well. We there held that the lease constituted a property and that it could not be divided by considering as a unit each well as to which participating rights had been sold.

The case of *Witherspoon Oil Co.*, 34 B. T. A. 1130, involved the same question as that in the case at bar. There the petitioner drilled several oil wells on two leaseholds. It capitalized the tangible and intangible costs of drilling each well, but kept no production, depletion, or depreciation records of each individual well. Upon the abandonment of certain wells the petitioner computed his loss by deducting the undepleted and undepreciated costs, less salvage, at that time. In that case, in discussing the effect of the petitioner's contention, we said:

This leaves for consideration whether the costs of preliminary development and drilling of the wells in question, exclusive of the costs of physical property which is subject to depreciation, may be deducted as a loss when the wells were no longer commercially profitable. The petitioner's claimed deduction is based on the theory that the entire cost of any particular well should be recovered ratably over the production of that particular well. The respondent treated the producing tract as a unit, applying against each barrel of oil produced the depletion unit derived from the total cost of all wells and estimated recoverable oil. Under his method each barrel of oil produced is burdened with an equal proportion of the cost of all wells on the tract. That method obviously precludes such a deduction as the petitioner claims, as long as the entire tract is not abandoned.

Because of the recognized difficulties in the computation of depreciation and

depletion the Congress expressly delegated the right to make rules and regulations therefor. *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301; *New Creek Co.* v. *Lederer*, 295 Fed. 433; certiorari denied, 265 U. S. 581. Article 215 of Regulations 65 prescribes how the reasonable allowance for depletion authorized by the statute shall be computed. It is therein provided that the allowance shall be based upon the production of each separate property which is defined as the mineral deposit (art. 201 (*c*)), or separate tracts or leases of the taxpayer (art. 221, Regulations 69). That article further provides that the unit of depletion for each separate property, multiplied by the number of units produced within the year upon such property, will determine the amount which may be deducted for depletion from the gross income of that year. This clearly indicates that all costs recoverable through depletion are to be returned over the producing life of the tract or property, which was the principle followed by the respondent in this proceeding. To hold otherwise would necessitate constant revision of the depletable base with corresponding change in the unit of depletion. Depleting on the basis of the entire property returns to the taxpayer all his costs providing his estimate of recoverable oil is fairly accurate. Such a method removes the uncertainties that are inherent in the petitioner's method. Subsequent regulations have carried the same interpretation of similar provisions of the statute. This interpretation, which is reasonable and practical, must be regarded as having the approval of Congress. * * *

See *Vinton Petroleum Co. of Texas* v. *Commissioner*, 71 Fed. (2d) 420; *Berkshire Oil Co.*, 9 T. C. 903.

Controlled by the facts now before us and guided by these principles and the reasoning set forth in *Witherspoon Oil Co.*, *supra*, we hold that the petitioner is not entitled to compute his loss upon the abandonment of each individual oil well drilled on a leasehold, but that he must compute such loss on the basis of each leased tract which, in this case, constitutes the "property" contemplated by the statute.

*Decision will be entered under Rule 50.*