BANKERS' TRUST CO. et al. v. BOWERS, Internal Revenue Collector.

(District Court, S. D. New York. August 13, 1923.)

1. **Internal revenue ⬤25—Section relating to returns for period of less than year applies to estates of decedents.**

   Revenue Act 1921, § 226 (c), relating to returns for a period of less than 12 months, is applicable to returns filed for decedents and to returns covering income received by the estates of decedents.

2. **Constitutional law ⬤284(1)—Internal revenue ⬤2—Section relative to returns for less than year not unconstitutional for lack of uniformity.**

   The fact that Revenue Act 1921, § 226 (c), relating to returns for a period of less than 12 months, applies to decedents and their estates, does not render it unconstitutional as taxing an income which does not constitute income, and it does not violate Const. Amends. 5 and 16, or article 1, § 2, cl. 3, and section 9, cl. 4, and does not violate the rule of uniformity prescribed by article 1, § 8.

At Law. Action by the Bankers' Trust Company and another, as executors of the last will and testament of John Glackner, deceased, against Frank K. Bowers, as Collector of Internal Revenue for the Second District of New York. On motion to dismiss complaint. Motion granted.

White & Case, of New York City (Joseph M. Hartfield and Russell D. Morrill, both of New York City, of counsel), for plaintiffs.

William Hayward, U. S. Atty., of New York City (Victor House, of New York City, and Nelson T. Hartson and A. Calder Mackay, both of Washington, D. C., of counsel), for defendant.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GODDARD, District Judge. This is a motion to dismiss a complaint on the ground that it failed to state facts sufficient for a cause of action. The complaint alleges two causes of action to recover federal income taxes paid by the plaintiffs under protest and duress.

The decedent died a resident of the city, county, and state of New York on April 4, 1921. On or about March 15, 1922, plaintiffs, as his executors, filed two income tax returns, reporting in one return the net income received by the decedent during the calendar year 1921, and in the other return the net income received by plaintiffs as said executors, during said calendar year. The first cause of action has to do with the tax paid upon the basis of the return filed for the decedent. The complaint alleges, in substance, that the correct tax liability of the decedent for the calendar year 1921 was $269.44; that the defendant demanded and the plaintiffs paid on account of said tax liability the sum of $1,560.04; that $1,290.60 of said tax was paid under protest and duress, and a claim for the refund thereof was subsequently rejected and denied by the Commissioner of Internal Revenue. The second cause of action relates to the tax paid upon the basis of the return reporting the net income received by the executors in 1921. The correct tax liability is alleged as $2,050.27; whereas the defendant demanded and the plaintiffs paid the sum of $2,633.85. Of such amount $583.58 was paid under protest, and a claim for the refund thereof was subsequently rejected and denied by the Commissioner of Internal Revenue.

The complaint alleges, with respect to each cause of action, that the tax demanded was determined and computed in the manner prescribed in section 226 (c) of the Revenue Act of 1921 for the computation of the tax in the case of returns "made for a portion of the calendar year or for a period of less than twelve months"; whereas, plaintiffs claim with respect to each cause of action that the tax "should be determined and computed as if the said return was made for a full calendar year." Judgment is demanded for the sum representing the difference between the amount of the taxes computed in the method contended for by the defendant and the tax liability computed in the method alleged and claimed by the plaintiffs.

The question is whether the taxes should have been determined in the manner prescribed in section 226 (c) of the Revenue Act of 1921 (42 Stat. 251), which provided as follows:

"(c) In the case of a return for a period of less than one year the net income shall be placed on an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in such period; and the tax shall be such part of a tax computed on such annual basis as the number of months in such period is of twelve months."

The defendant contends that the returns filed by plaintiffs were such returns and has determined the tax liability thereunder by (1) multiplying the net income by 12; (2) dividing the product so obtained by the number of months and fraction thereof in the period covered by the return; (3) computing the normal and surtax on the quotient; and (4) dividing the total tax so computed by 12, and multiplying the quotient by the number of months and fraction thereof in the period covered by the return.

The plaintiffs contend that the returns were not returns "for a period of less than one year," within the meaning of section 226 (c) and that the taxes, therefore, should have been computed in the ordinary method prescribed for the computation of income taxes.

The questions therefore involved are: (1) In the first cause of action, is section 226 (c) applicable to returns filed for decedents? (2) In the second cause of action, is section 226 (c) applicable to returns covering income received by the estates of decedents? (3) If thus applicable, is section 226 (c) constitutional? The first two questions involve the interpretation of section 226 (c) of the Revenue Act of 1921 and because of their similarity the answer to one will determine the other.

Section 226 is as follows:

"Returns for a Period of Less Than Twelve Months.

"Sec. 226. (a) That if a taxpayer, with the approval of the Commissioner, changes the basis of computing net income from fiscal year to calendar year, a separate return shall be made for the period between the close of the last fiscal year for which return was made and the following December 31. If the change is from calendar year to fiscal year, a separate return shall be made for the period between the close of the last calendar year for which return was made and the date designated as the close of the fiscal year. If the change is from one fiscal year to another fiscal year, a separate return shall be made for the period between the close of the former fiscal year and the date designated as the close of the new fiscal year.

"(b) In all cases where a separate return is made for a part of a taxable year the net income shall be computed on the basis of such period for which separate return is made, and the tax shall be paid thereon at the rate for the calendar year in which such period is included.

"(c) In the case of a return for a period of less than one year the net income shall be placed on an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in such period; and the tax shall be such part of a tax computed on such annual basis as the number of months in such period is of twelve months."

Subdivision (c) is complete in itself; its language and meaning are clear. The title of the section is "Returns for a Period of Less Than Twelve Months." It refers to tax returns for a period of less than a year. I see no reason to believe that it is intended to refer only to cases in which there has been a voluntary change of accounting or cases in which the Commissioner declares the taxable period terminated under section 250 (g). It is under a heading dealing with returns for a less period then 12 months, and because subdivision (a) refers only to change from calendar to fiscal year, or change of fiscal year, to say that sections (b) and (c) are limited to returns that occur from changes of plan of accounting, is to read into the sections something that is not there. It seems to me merely an orderly method of uniting under the one title provisions relating to all returns covering a period of less than a year, whatever may be the cause for such period. Such an interpretation is emphasized by comparing this section 226 with its corresponding section of the Revenue Act of 1918 (section 226 [Comp. St. Ann. Supp. 1919, § 6336⅛m]), which reads as follows:

"Returns When Accounting Period Changed.

"Sec. 226. That if a taxpayer, with the approval of the Commissioner, changes the basis of computing net income from fiscal year to calendar year

a separate return shall be made for the period between the close of the last fiscal year for which return was made and the following December thirty-first. If the change is from calendar year to fiscal year, a separate return shall be made for the period between the close of the last calendar year for which return was made, and the date designated as the close of the fiscal year. If the change is from one fiscal year to another fiscal year a separate return shall be made for the period between the close of the former fiscal year and the date designated as the close of the new fiscal year. If a taxpayer making his first return for income tax keeps his accounts on the basis of a fiscal year he shall make a separate return for the period between the beginning of the calendar year in which such fiscal year ends and the end of such fiscal year.

"In all of the above cases the net income shall be computed on the basis of such period for which separate return is made, and the tax shall be paid thereon at the rate for the calendar year in which such period is included; and the credits provided in subdivisions (c) and (d) of section 216 shall be reduced respectively to amounts which bear the same ratio to the full credits provided in such subdivision as the number of months in such period bears to twelve months."

So that the title and scope of the section has been enlarged. The only subject dealt with under the earlier act was "Change of Accounting Period," instead of "Returns for a Period of Less Than Twelve Months," with the subdivisions (a), (b), and (c) of the present act. The earlier act contained two paragraphs, the first of which was substantially the same as subdivision (a) of the later act, and the second paragraph, which begins "In all of the above cases. * * *" In the later act, however, section 226, after prescribing in subdivision (a) the different periods to be covered by separate returns in cases where accounting periods are changed, deals in subdivisions (b) and (c) with all cases of separate returns for a period of less than twelve months. Thus subdivision (b) reads:

"In all cases where a separate return is made for a part of a taxable year. * * *"

Subdivision (c) begins:

"In the case of a return for a period of less than one year. * * *"

These changes are significant, and indicate an intention to have section (c) apply to the returns of all incomes for a period of less than 12 months, whether the accounting period is changed or not. Congress recognized that formerly, whenever there was a return covering a fractional part of a year, the government lost considerable revenue to which it was equitably entitled. This was due to the fact that the rates of both normal and surtax were graduated and the rate of tax was necessarily lower in all cases of returns for a period of less than twelve months than a rate of tax for a full year. This was just as true in the case of decedents as in the case of a change in accounting period. The amounts of tax upon income of part of a year should be less than the amount for a full year, but equitably, both as between the government and the taxpayer and as between different taxpayers, the rates should be the same in either case. Section 226 (c) of the Revenue Act of 1921 secures this desired uniformity by providing that the net income shall be placed upon an annual basis and that the tax upon such annual income shall be proportionate to the period covered by the return.

There is another significant addition to the 1918 act by the 1921 act, which indicates an intention to apply section 226 (c) in the manner contended for by the government, and that is the addition of subdivision (f) to section 216. Section 216 (f) of the 1921 act provides that:

"The credits allowed * * * shall be determined by the status of the taxpayer on the last day of the period for which the return of income was made; but in the case of an individual who dies during the taxable year, such credits shall be determined by his status at the time of his death, and in such case full credits shall be allowed to the surviving spouse, if any, according to his or her status at the close of the period for which said survivor makes return of income."

The credits allowed, under the law, against a taxpayer's net income, for the purpose of determining his net taxable income, are $1,000 for a single person, and $2,000 to a married person, with an additional amount for each minor child. The subdivision just quoted allows the full annual credits. Under section 226 of the act of 1918 full annual credits were specifically denied, but were to be prorated. The last paragraph of this section provided, inter alia:

" * * * The credits * * * shall be reduced respectively to amounts which bear the same ratio to the full credits provided in such subdivisions as the number of months in such period bears to twelve months."

The full paragraph was omitted in the 1921 act, and, as heretofore stated, subdivision (f) was added to section 216, thus clearly indicating that, where full annual credits are to be allowed, the income against which these credits are to be taken must be placed on an annual basis. It is contrary to the theory of the income tax laws to allow full annual credits against incomes for less than 12 months, unless the incomes are placed upon an annual basis.

[1] The plaintiffs contend that section 226 (c) does not apply to returns of decedents or of their estates, for the reason that such return is a return, not for a fractional part of a year, but for an entire year, this because the statute nowhere specifically declares that such a return is a return for a fractional part of a year, and nowhere explicitly requires a separate return in case of a decedent and of the income received by his estate; that the fundamental scheme of title II of the act is that of a tax upon the net income of a taxpayer during a period of 12 successive months; that the taxing sections of the act, sections 210 and 211, respectively, impose a normal and surtax "for each taxable year upon the net income of every individual."

"Taxable year," the term applied to the general accounting period, is defined in section 200 as follows:

"(1) The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term 'fiscal year' means an accounting period of twelve months ending in the last day of any month other than December. The first taxable year, to be called the taxable year 1921, shall be the calendar year 1921 or any fiscal year ending during the calendar year 1921."

Section 212, which provides for the basis of computing the net income of individuals, states:

"(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method, employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200, or if the taxpayer has no annual accounting period, or does not keep books, the net income shall be computed on the basis of the calendar year.

"(c) If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period subject to the provisions of section 226."

However, under the prior Revenue Acts, and under these acts, the Treasury Department has, by regulations which were reasonable and within the scope of its authority, required separate returns of income received by the decedent during the fractional period prior to death and of income of the estate during the fractional period from the date of death to the end of the year. The regulation referred to is article 421 of regulation 45, and so far as it is material reads as follows:

"Every fiduciary, * * * must make a return of income (a) for the individual whose income is in his charge, if the net income of such individual is $2,000 or over if married and living with husband or wife, or is $1,000 or over in other cases. * * * If the net income of a decedent from the beginning of the taxable year to the date of his death was $1,000 or more if unmarried, or $2,000 or more if married, the executor or administrator shall make a return for such decedent."

When Congress enacted the 1921 act it was cognizant of the foregoing regulation requiring separate returns to be made of the income of decedents and the income of their estates, and that in every such instance there would of necessity be a return for a period of less than 12 months. Therefore, knowing of this regulation, Congress must have intended to apply section 226 (c) to the income of decedent and their estates. The class of returns which are under consideration are those which actually do cover a period which is less than a year, and if 226 (c) is to be regarded as meaning just what it says, it must refer to them.

[2] It is contended that section 226 (c), if construed to be applicable to returns filed for decedents and their estates, is unconstitutional upon two grounds:

"I. That in operation, section 226 (c) would tax as income that which does not constitute income within the meaning of the Sixteenth Amendment to the Constitution, and therefore violates the provisions of article 1, section 2, clause 3, and article 1, section 9, clause 4, of the Constitution."

It is urged in support of this that to tax decedents and their estates, by multiplying net income by 12 and dividing by the number of months included in the period covered by the return, has the effect of imposing a tax based upon a supposititious income and not real income. It is said, for instance, that this is what happens if section 226 is applied to an individual whose net income during January is $1,000 and who dies January 31st, that he is being taxed upon a net income of

$12,000, $11,000 of which by no stretch of the imagination would be considered income. The first and entirely obvious answer to this argument is that he is not being taxed upon $12,000 for one month, which is his taxable period, but upon $1,000 for one month; that is to say, he is being taxed upon his actual income for the part of the year during which he was alive.

It would seem extraordinary for a decedent to be taxed on the basis of an annual period during part of which he is in his grave; and a construction does not seem reasonable which allows to a taxpayer whose taxable period is less than a year the same credits and exemptions that are allowed to one whose taxable period covers a full year. It is possible to conceive some rare instances when the application seems harsh for the decedent, but, on the other hand, it is possible to conceive instances where the decedent would benefit. But unfortunately this is true of most tax laws.

The second ground upon which plaintiffs assert the unconstitutionality of section 226 (c) is that it is violative of the Fifth Amendment to the Constitution; more particularly, that it operates to determine the net income of decedents by a rule different from that of living persons by denying the former substantial deductions accorded to the latter and taxing a decedent a substantially larger amount than a living person on exactly the same amount of net income.

Under the Constitution the general power is given to Congress to lay and collect taxes, but they must be uniform. The rule of uniformity prescribed is the territorial uniformity required by article 1, section 8, of the Constitution. La Belle Iron Works v. U. S., 256 U. S. 392, 41 Sup. Ct. 528, 65 L. Ed. 998. The mere fact that the income of the decedent and the income of his estate are made subject to the higher rates—surtaxes—does not result in oppressive or discriminatory taxation, such as the Constitution forbids. Even though a statute may operate oppressively upon some taxpayers, or even all, is no reason for the judicial department to declare the same void. From time immemorial the imposition of taxes has been a burden, and never has that burden been evenly distributed or equalized, although that is the aim of political science. Taxing statutes may, and almost always do, operate more oppressively upon some persons than others.

The state of Illinois enacted an inheritance tax law providing that a tax of 3 per cent. should be paid by every one receiving a legacy of $10,000, and a tax of 4 per cent. should be paid by every one receiving more than $10,000. An action was instituted to contest the constitutionality of this statute; the plaintiff contending that the statute was oppressive and unreasonable, discriminatory in that a person receiving $10,000 would be compelled to pay only $300 as tax and would receive as his net legacy the sum of $9,700, while one receiving $10,001 would pay $400.04, and his net legacy would be $9,600.96, just $99.04 less than the one whose legacy was actually only one dollar less than the other. In answer to this contention, the Supreme Court of the United States, in Magoun v. Illinois Trust Co. & Savings Bank, 170 U. S. 283, 300, 18 Sup. Ct. 594, 601 (42 L. Ed. 1037), said:

"If there is unsoundness, it must be in the classification. The members of each class are treated alike; that is to say, all who inherit $10,000 are treated alike—all who inherit any other sum are treated alike. There is equality, therefore, within the classes. If there is inequality, it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it. This is claimed. It is said that the tax is not in proportion to the amount but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000 or less pays 3 per cent., and that one over $10,000 pays, not 3 per cent. on $10,000 and an increased percentage on the excess over $10,000, but an increased percentage on the $10,000, as well as on the excess, and it is said, as we have seen, that in consequence one who is given a legacy of $10,001 by the deduction of the tax receives $99.04 less than one who is given a legacy of $10,000. But neither case can be said to be contrary to the rule of equality of the Fourteenth Amendment. That rule does not require, as we have seen, exact equality of taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances."

If a classification based upon a difference of $1 in the amount of income received by taxpayers otherwise similarly situated is a reasonable classification, then unquestionably the classification here involved is not unreasonable. In the case of Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, the court said:

"In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshall: 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the Legislature is not to the courts, but to the people by whom its members are elected.'"

See, also, Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546; Billings v. United States, 232 U. S. 261, 34 Sup. Ct. 421, 58 L. Ed. 596; Flint v. Stone-Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

The application of section 226 (c) of the Revenue Act of 1921 to the decedent's income and the income of his estate does not render the act unconstitutional, although in some instances placing these incomes upon an annual basis, as provided by the section, may subject the income to the higher surtaxes. The rates imposed are uniform. Every taxpayer under the same circumstances pays the same tax, and therefore there is no discrimination. From the foregoing it cannot be questioned that Congress has the power to tax the income of a decedent, as well as the income of his estate, and it may devise any reasonable methods for the computation of those taxes. The method provided by section 226 (c) is reasonable.

The motion to dismiss the complaint is granted.