## THOMPSON OIL & GAS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 192.

Circuit Court of Appeals, Tenth Circuit.

April 4, 1930.

Phil D. Morelock, of Kansas City, Mo., and J. S. Y. Ivins, of Washington, D. C. (Shouse, Doolittle, Morelock & Shrader, of Kansas City, Mo., and Holmes, Brewster & Ivins, of Washington, D. C., on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen.. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John McC. Hudson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals. The petitioner was the owner of an oil and gas lease acquired prior to March 1, 1913. On that date, its recoverable oil reserves were 278,000 barrels and the value thereof was $156,645. On January 15, 1916, petitioner acquired an extension of its lease for a consideration of $30,000, which increased its recoverable oil reserves by 300,000 barrels.

The controversy concerns the proper depletion allowance for the year 1918.

The Commissioner determines the amount of sustained depletion for a given year as follows: He divides the value of the oil reserves at the beginning of the year, based on their March 1, 1913, value (or their cost, if acquired thereafter), by the number of barrels of oil reserves at the beginning of such year, to obtain in the form of a decimal the rate per barrel of depletion. Such decimal is the amount of capital investment in each barrel of such oil reserves. He multiplies the number of barrels produced in such year by such decimal and thereby arrives at the amount of sustained depletion for that year.

The per barrel depletion unit of petitioner for 1913 was $0.56347. Theoretically, the rate per barrel of depletion is determined each year, after deducting the depletion for the preceding year from the capital investment and the production for the preceding year from the oil reserves; but, unless a part of the oil reserves is sold or new oil reserves are acquired, the rate per barrel remains constant.

Employing the above method, the Commissioner determined the aggregate of petitioner's sustained depletion for 1913, 1914 and 1915 to be $91,686.15.

The Revenue Act of 1913 (38 Stat. 114) limited the depletion allowance to 5% of the gross income and under this Act the petitioner was entitled to deduct a depletion allowance of $6,322.02 for the years 1913 to 1915, inclusive.

Because of the acquisition, in 1916, of additional oil reserves, a redetermination of the rate per barrel of depletion was necessary. To the value of the oil reserves on March 1, 1913, less the sustained depletion for 1913, 1914 and 1915, the Commissioner added the cost of the 1916 acquisition. To the oil reserves on March 1, 1913, less the production for 1913, 1914 and 1915, the Commissioner added the additional reserves acquired in 1916. He divided the former result by the latter to obtain the rate per barrel of depletion for 1916. The new per barrel depletion unit was $0.22866. Since there was no change in the oil reserves by purchase or sale after 1916, the decimal remained constant and was applied in determining the depletion sustained for the years 1916 and 1917, and the depletion allowable for the year 1918.

The sustained depletion for 1916 was $11,307.69, and for 1917 was $8,964.39.

Section 12 (a) Second, of the Revenue Act of 1916 (39 Stat. 768), limited the depletion allowance, in case of an oil and gas well, to "a reasonable allowance for actual reduction in flow and production" instead of the depletion actually sustained.

Paragraph 537, of Regulations 33, Revised, provided that, when the sum of the credits for depletion should equal the value or cost of the property, no further deduction for depletion would be allowed with respect to such property.

In arriving at the capital investment on January 1, 1918, the Commissioner deducted, not the allowable, but the sustained depletion, which aggregated the sum of $111,958.23.

Counsel for the petitioner contend that the capital investment on January 1, 1918, should have been determined by adding the cost of the 1916 acquisition to the 1913 value of the oil reserves and deducting the allowable, as distinguished from the sustained depletion for the years 1913 to 1917, inclusive; and that the rate per barrel of depletion for the year 1918 should have been determined by dividing such result by the number of barrels of oil reserves remaining on January 1, 1918, after adding the 1916 acquisition and deducting the production from 1913 to 1917, inclusive. In other words, that allowable, instead of sustained depletion should have been used in determining the capital investment in oil reserves on January 1, 1918.

Counsel for the Commissioner contend that the capital investment, upon which the depletion allowances provided for by the Revenue Act of 1918 should be applied, is the value of the oil reserves on March 1, 1913,

plus the cost of the 1916 acquisition, less the sustained, as distinguished from the allowable depletion during the period from 1913 to 1917, inclusive.

The majority opinion of the Board of Tax Appeals upheld the contentions of the Commissioner. There was a dissent in which three of the members joined and three other members dissented without opinion.

Section 234, of the Revenue Act of 1918 (40 Stat. 1077), in part provides:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: Provided further, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee."

Article 201, of Regulations 45, under the Revenue Act of 1918, in part provides:

"Sections 214 (a) (10) and 234 (a) (9) provides that taxpayers shall be allowed as a deduction in computing net income in the case of natural deposits a reasonable allowance for depletion of mineral and for depreciation of improvements. * * *

"The essence of these provisions of the statute is that the owner of mineral deposits, whether freehold or leasehold, shall within the limitations prescribed, secure through an aggregate of annual depletion and depreciation deductions the return of either (a) his capital investment in the property, or (b) the value of his property on the basic date, plus subsequent allowable capital additions.

"When used in these articles of the regulations covering depletion and depreciation—

"(a) The term 'basic date' indicates the date of valuation, i. e., March 1, 1913, in the case of property acquired prior thereto, the date of acquisition in the case of property acquired on or after March 1, 1913, or the date of discovery, or within 30 days thereafter, in the case of discovery."

Article 203, of Regulations 45, under the Revenue Act of 1918, in part provides:

"(a) In the case of a lessee, the capital remaining in any year recoverable through depletion and depreciation deductions is (1) the value as of the basic date of the lessee's equity in the property plus (2) subsequent allowable capital additions but minus (3) depletion and depreciation sustained, whether legally allowable or not from the basic date to the taxable year. The capital recoverable through depletion is the total capital remaining less the sum recoverable through depreciation."

Counsel for the petitioner rely upon United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 610, 71 L. Ed. 1054. That case involved the amount of income, under the Revenue Act of 1916 as amended by the Revenue Act of 1917, derived from the sale in 1917 of mining properties, including oil reserves, acquired in part prior to March 1, 1913.

Until 1924, none of the Revenue Acts expressly provided that, in computing gain from the sale of property, deduction should be made from the original cost on account of depreciation and depletion.

Ludey contended, first, that no deduction should be made from cost on account of depreciation and depletion and, second, if any such reduction were made, it should be the amount claimed by him rather than the greater amount which he might have claimed in his income tax returns.

On the other hand, the government contended that, in the extraction and sale of oil, Ludey consumed so much of the equipment as was represented by depreciation and disposed of so much of the oil reserves as was represented by depletion and, for that reason, the amounts of the sustained or actual depreciation and depletion should be deducted from the cost of the property, in computing the income resulting from the sale.

The court held that "the theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of

it" and that "the depreciation charged is the measure of the cost of the part which has been sold"; that, "when the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired"; that "the amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties"; that "any other construction would permit a double deduction for the loss of the same capital assets" and that "the amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sum set aside will (with the salvage value) suffice to provide an amount equal to the original cost."

The court further held that the depletion charge, permitted as a deduction from the gross income in determining taxable income of mines for any one year, "represents the reduction in the mineral contents of the reserves from which the product is taken"; that, "in essence, the deduction for depletion does not differ from the deduction for depreciation"; and that the deduction for depletion "is to be regarded as a return of capital."

The court concluded that the deduction to be made from the original cost on account of depreciation and depletion "should be the aggregate amount which the taxpayer was entitled to deduct in the several years."

Counsel for the petitioner assert that it follows, from the decision in the Ludey Case, (1) that depletion and depreciation are the same; (2) that depletion is a gradual sale of the oil reserves; (3) that, in determining capital investment as of January 1, 1918, allowable depletion, instead of sustained depletion, should be deducted for the years 1913 to 1917, inclusive.

Counsel for the petitioner further assert that the history of the Revenue Acts and their several provisions relative to depletion indicate that Congress intended the taxpayer should ultimately receive as depletion allowances, the value of his capital investment on January 1, 1913, plus allowable capital additions; that such is the construction of the 1918 Act made by Art. 201, of Regulations 45; that such capital investment will be returned in the instant case only by the application of the construction for which petitioner contends.

On the other hand, counsel for the Commissioner assert that the tax on the product of a mine or oil well is an excise tax and that Congress might legally exact such tax without making any allowance for depletion and cite Stanton v. Baltic Mining Co., 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546, in support of such contention. From such premise, they argue that Congress elected, in the 1913 Act, to limit the depletion allowance to 5% of the gross income; and, in the 1916 Act, to limit the depletion allowance to a reasonable allowance for actual reduction in flow and production; and that, by the 1918 Act, Congress intended to make provision for depletion actually sustained in 1918 and in the years subsequent thereto, and Congress did not intend to provide for allowance, in 1918 and the years subsequent thereto, for depletion actually sustained but not allowed prior to 1918.

While the Ludey Case involved deduction of depletion from cost upon the immediate sale of the entire oil reserves and the instant case involves the depletion allowance upon a gradual sale of a part of the oil reserves, the analogy between them is close; and it is our opinion that the principles laid down in the Ludey Case control the instant case.

It is not strictly a question of allowing, in 1918, a part of the depletion sustained in the preceding years, but rather one of determining the cost of the reserves remaining on January 1, 1918, for the purpose of computing depletion allowances for that year, under the Revenue Act of 1918. If such depletion results from a gradual sale of the property— and we think it does—then the cost of the oil sold in 1918 should be computed on the basis laid down in the Ludey Case. Depletion represents the cost of the oil sold in 1918. Such cost would be the value of the oil reserves on March 1, 1913, plus the cost of the 1916 acquisition, less the allowable depletion for the years 1913 to 1917, inclusive, divided by the number of barrels of oil reserves remaining January 1, 1918, and multiplied by the number of barrels of oil produced in 1918; and would be the depletion allowance for the year 1918. It is true that the result obtained does not reflect the actual cost, because there was a greater sustained depletion; but neither did the application of the rule laid down in the Ludey Case reflect the actual cost of the property sold, because there was a greater sustained depletion.

There can be no doubt that, once the capital investment or cost of the oil reserves remaining on January 1, 1918, is determined, the 1918 Act intended a depletion allowance that would return that capital investment by the expiration of the lease term.

The decision of the Board of Tax Appeals is reversed and the proceeding remanded with instructions to redetermine the taxes in accordance with this opinion.