LittletoN, Judge,
delivered the opinion of the court:
Plaintiff purchased four annuities in 1937 for $25,000 each, or a total of $100,000, entitling him to aggregate monthly payments of $407, or $4,884 a year, for the balance of his life. Each contract provided that in case of plaintiff’s death prior to the receipt by him of a sum equal to the total premium paid, a further sum equal to the balance of the premium would be paid to his wife or to his estate.
Plaintiff seeks to recover income tax deficiencies and interest assessed and collected for 1938 and 1939 on account of the *89 exaction of a tax on a portion of the annuity payments received in those years, on the asserted ground that Section 22 (b) (2) of the Revenue Act of 1938 is unconstitutional. In each of the years mentioned the Commissioner of Internal Revenue, pursuant to the explicit’ requirement of Section 22 (b) (2) of the Revenue Act of 1938,26 TJ. S. C. 22 (first enacted as Section 22 (b)' (2), Revenue Act of 1934), required that of the annuities totaling $4,884 received under the contracts, the amount of $3,000, being an amount equal to 3 percent of the consideration paid for the annuity contracts, be included in gross income.[1] ■ Plaintiff paid the deficiencies and interest assessed and his claims for refund thereof were rejected.
It will be seen in this case that, as in other eases where the treatment of annuity payments for tax purposes has received judicial attention,2 the plaintiff has been required to include in gross-income the annuity payments received in each year to the extent of an amount equal to 3 percent of the aggregate consideration paid for the annuity contracts, undiminished by any payments made to the annuitant in prior years in excess of such percentage amount. Therefore, so long as Section 22 (b) (2) remains unchanged, the plaintiff, aged 45 and with a normal life expectancy, on the basis of mortality tables, of about 28 years at the time he purchased the *90 annuities in August. 1937, will be required to include in income not only $3,000 of the $4,884 received in each of the years 1938 and 1939, but a like amount in each of the subsequent years of his life, notwithstanding approximately 53 years (100,000-^-1,884) will be required, on the basis of such table, for the annual amounts received by plaintiff in excess of $3,000 to aggregate the sum of $100,000 paid for the annuity contracts.
Plaintiff takes the position that the taxing of $3,000 of the $4,884 received by him in each of the years 1938 and 1939 (at which times he had received only a small fraction of the amount he had paid for the annuity policies), necessarily constitutes taxation on an amount which was not income within the meaning of the Sixteenth Amendment, and that insofar as the Revenue Act -directs or permits such taxation it' is unconstitutional because the tax attempted to be imposed is a direct tax on property without the apportionment required by Article I, Section 2, Clause 3, and Article I, Section 9, Clause 4, of the Constitution.
Plaintiff first contends that the full amounts of the annuities received by him in 1938 and 1939 were nothing more than the return to him of a portion of the capital invested in the purchase of the annuities, and hence that until the full purchase price of the annuities of $100,000 has been returned to him, the tax imposed by Section 22 (b) (2) is a tax upon capital and not upon income derived from capital. The evidence offered by plaintiff falls far short of supporting this contention. See Finding 4.
The evidence shows that from the standpoint of an insurance company each payment represents in part interest on the investment. Me cannot, therefore, say that such part is capital, and nontaxable, in the hands of the annuitant Klein v. Commissioner, 6 B. T. A. 617; Guaranty Trust Co. v. Commissioner, 15 B. T. A. 20, and cases cited in footnote 2, supra.
Plaintiff next contends that even if it be conceded that some part of each annuity payment was income and, therefore, subject to be taxed, the amount arbitrarily designated by the statute for inclusion in gross income cannot be reconciled with the best evidence available as to what portions of the *91 annuity payments received by Mm in 1938 and 1939 were, and what portions of the payments received in the future will be, gain derived by plaintiff from his investment of capital in the annuity policies. This contention is based primarily upon the American Annuitants’ Male Select Table of Mortality, rated down one year, under which the probability, in August 1937, that plaintiff would survive another 53 years was less than one-half of one percent. Such mortality tables are used by insurance and annuity companies in determining rates of insurance and annuities for certain groups of people. They are based on a limited number of lives and,.while reliable in connection with certain determinations, we think such evidence is not determinative of the question presented. We cannot accept such evidence as sufficient, standing alone, to establish the fact that a substantial portion of the annuity payments received by plaintiff did not constitute income, nor as sufficient evidence to show that the action of Congress in fixing, after a full investigation, the measure of the taxable income in connection with receipt of such annuities was without foundation, wholly arbitrary and, therefore, void under the Sixteenth Amendment. Cf. Helvering v. Midland Mutual Life Insurance Co., 300 U. S. 216.
It is not enough that plaintiff may show or that we may find the tax to be harsh and inequitable in its application and perhaps in need of revision. Arguments as to the expediency of levying such a tax in the manner and on the basis set forth in Section 22 (b) (2), supra, or of the economic mistake which may be involved in its imposition, are beyond judicial cognizance. As was stated by the court in Metropolis Theatre Co. v. Chicago, 228 U. S. 61, 69-70, “To be able to find fault with a law is not to demonstrate its invalidity. * * * The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.”
The provision of the Eevenue Act of 1938 with which we are here concerned was first enaeted in the Eevenue Act of 1934 (48 Stat. 680). In its report on H. E. 7835, which became the Eevenue Act of 1934, the Ways and Means Committee of the House of Eepresentatives gave the following explanation of its investigations and conclusions in support *92 .of the change in Section 213 (b) (2) of the 1926 Act, which became Section 22 (b) (2) of the 1934 Act. House Report No. 704, 73d Cong., 2d Sess., p. 21 (1939-1 Cum. Bull., Part 2, pp. 554, 569-70) :
Section 22 (b) 2. Annuities, etc.: The present law does not tax annuities arising under contracts until the annuitant has received an aggregate amount of payments equal to the total amount paid for the annuity. Payments to annuitants are, in fact, based upon mortality tables which purport to reflect a rate of return sufficient to enable the annuitant to recover his cost and in addition thereto a low rate of return on his investment. _ The change continues the policy of permitting the annuitant to recoup his original cost tax-free but requires him to include in his gross income a portion of the annual payments in an amount equal to 3 percent of the cost of the annuity. While the percent used is arbitrary, it approximates the rate of return in the average annuity.
Statistics show that an increasing amount of capital is going into the purchase of annuities, with the result that income taxes are postponed indefinitely. The change merely places the return of this form of investment on the same basis as other forms of investment by taxing that portion of each payment which in fact constitutes income. .
See, also, S. Rep. No. 558, 73d Cong., 2d Sess., p. 23 (1939-1 Cum. Bull. (Part 2) 586, 604).
Thus the formula employed by Congress in Section 22 (b) (2) for taxing a portion of the payments received from the investment of funds in annuity contracts does not purport to directly charge with a tax the source from which the payments are derived. On the contrary, as stated in Manne v. Commissioner, 155 Fed. (2d) 304, at 307, “Congress, in providing that the return from, such annuity contracts should be included in the annuitant’s gross income to the extent of three percent of the sum invested by the annuitant, may be said to have made an approximation of that portion of the annuitant’s return which is received by him in the form of income from the capital invested.”
In holding that the taxpayer in the Manne case was, under the facts in that case, in no position to question the constitutionality of Section 22 (b) (2) the court stated, at page 307:
*93 * * ' * A taxpayer claiming that the section of the Revenue Code in question imposes in a given case a tax upon the return of capital under the guise of a tax on income is under the burden of establishing that no income was in fact received by him from his investment, or at least that the income actually received is less than three percent upon his investment. In this case there is no evidence to show that the earnings on the taxpayer’s investment were less than three percent of its amount during the taxable years in question, or to support the inference that the payments received by him were wholly or even partly a return of capital. * * * A taxpayer alleging unconstitutionality of an act must show not only that the act is invalid, but that he has sustained some injury as a result of its enforcement.
With the above-quoted statement of the court in mind, plaintiff now urges that under the facts presented in this case he has sufficiently sustained the burden of proof suggested in the Mm/m case, to show that Section 22 (b) (2), to the extent that it undertakes to define as income and tax without apportionment $3,000 of his annual annuity payments, is unconstitutional as imposing a tax on property which is not income.
We cannot agree, for the reasons already stated, that plaintiff has sufficiently sustained the burden of proof which rests upon him. Moreover, we cannot determine from anything in the evidence what part of the payments periodically made to plaintiff during the taxable years actually represents earnings on the amounts paid by him as. consideration for the policies and what part was simply a return of capital. Conceivably, so far as the evidence shows, the earnings, on plaintiff’s investment may have been, from the standpoint of the insurance companies, adequate to cover those portions of the 1938 and 1939 payments on which the tax in question was imposed. ,
Plaintiff’s argument upon this phase of the case appears to us, upon analysis, to amount to little more than the contention sustained in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, prior to the enactment and ratification of the Sixteenth Amendent. This amendment, however, relieved the taxation of income “from whatever source derived” from any necessity for apportionment.
*94 The weakness of plaintiff’s argument lies in the premise that the taxpayer is constitutionally guaranteed the full return of whatever sums he may invest before any part of the proceeds from his investment may be taxed as income, and that until this is assured Congress does not possess the power to designate as income subject to tax without apportionment, any receipts from his invested property which may in the course of events prove to have been derived from the property itself. Cf. Peabody v. Eisner, 247 U. S. 347; Stanton v. Baltic Mining Co., 240 U. S. 103.
The view we have taken with respect to plaintiff’s premise as a ground for declaring an act of Congress to be unconstitutional is not, in our opinion, contrary to the generally accepted view that in the cases of sales of property the capital must be returned before there is any income t,o be taxed by way of profit, nor to anything which was said by the court in Burnet v. Logan, 283 U. S. 404. In that case the court was not deciding the question of whether the income statute involved sought to impose a tax beyond the constitutional p.ower of Congress, but rather the question whether, under the applicable provisions of the statute before the court, certain receipts from a sale were taxable in part as capital. In stating, at page 414, that “If a sum equal to the value thus ascertained had been invested in an annuity contract, payments thereunder would have been free from income tax until the owner had recouped his capital investment,” the court quite obviously was speaking of the situation as it w.ould have existed under the Eevenue Act of 1916, wherein amounts received as a return of premiums under annuity contracts were excluded from gross income.
Notwithstanding the absence of any showing of a certainty that Section 22 (b) (2) levies a direct tax on capital, the plaintiff, on the strength of what was said in Burnet v. Logan, supra, and on the basis of the definition ,of “income” given in Eisner v. Macomber, 252 U. S. 189, 207, would have us treat the annuity payments to him as, in effect, piecemeal sales of his annuity investments, or as a gradual conversion of a capital asset from one form to another, so as to make it necessary to measure .out the return of capital before arriving at any amount as gain derived therefrom. However, *95 we think an investment of funds in an annuity is a transaction which is materially different from an ordinary business transaction entered into for profit where the concept of gain or loss might be applicable. To some extent ,one who has invested his money in an annuity may be said to have “spent it,” that is, to have parted with it in order to obtain contractual rights which are not inherent, in the same degree at least, in the mere ownership of property. “Elements of value other than the right to receive payments for life are present in an annuity, e. g., security, assurance of income, regularity of payments and relief from responsibility of attending to investment. The experience which actually develops for the annuitant, whatever that may be, extinguishes both the annuity’s cost and its expected returns as a capital investment.” Evans v. Rothensies, 114 Fed. (2d) 958, 961.
In the final analysis and in view of the positive language of the statute, our inquiry in the present' case must be confined to the question whether we have here a clear case of a statute undertaking to define and tax as income something which cannot be properly regarded as income within the scope of Article I of the Constitution and the Sixteenth Amendment. In Sinking-Fund Cases, 99 U. S. 700, 718, the court said:
It is our duty, when required in the .regular course of judicial proceedings, to declare an act of Congress void if not within the legislative power of the United States; but this declaration should never be made except in a a clear case. Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule.
Guided by this principle and the decision of the court in Missouri K. & T. Ry. Co., v. May, 194 U. S. 267, 270, “that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts,” we are unwilling to say that the view of Congress, as indicated by the Committee reports on the enactment in question, that *96 a substantial portion of amounts received under annuity contracts represents income and its finding as expressed in the statute that 3 percent of such annual payments is a fair approximation of the income in the average annuity, were without foundation. We cannot, therefore, adjudge that Congress transcended the limits of its constitutional power in requiring that plaintiff’s annuity payments be included in gross income for tax purposes to the extent provided in Section 22 (b) (2) of the Eevenue Act of 1938.[3] “In reaching this conclusion we have recognized the principle, long established and vital in our constitutional system, that the courts may not strike down an act of legislation as unconstitutional, unless it be plainly and palpably so. The statute here involved may be unwise. But an unwise enactment is not necessarily, for that reason, invalid.” Booth v. Illinois, 184 U. S. 425, 431.
The plaintiff is not entitled to recover and his petition is therefore dismissed. It is so ordered.
Howell, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.

 Sec. 22. Gross income, (a) General definition.—
* * * * » '
(b) Exclusions from Gross Income. — The following items shall not be included in gross income and shall be exempt from taxation under this title: * *
(2) Annuities, etc. — Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded grom gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title ol prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *
2 Raymond v. Commissioner, 114 Fed. (2d) 140; Gillespie v. Commissioner, 128 Fed. (2d) 140; Commissioner v. Meyer, 139 Fed. (2d) 256, and Manne v. Commissioner, 155 Fed. (2d) 304.

 See, Roswell F. Magill, The Income Tax Liability of Annuity and Similar Periodic Payments (1924), 33 Yale L. J. 229, 235. See, also, Magill, Taxable Income, p. 375, in which it is stated with respect to Section 22 (b) (2), that “It is well known that an annuity is calculated to yield a recipient who lives out his expectancy a total amount equal to the consideration p'aid, plus interest thereon, hence, each annual payment, from the actuarial point of view, is made up partly of a return of capital and partly of income. The statutory method is an arbitrary but essentially equitable device for determining the amount of the income for taxation. Hence, it should be sustained.”