## BUFFINGTON v. AMERICAN GROCERY CO.

### No. 3170.

Court of Civil Appeals of Texas. El Paso. March 21, 1935.

Rehearing Denied April 25, 1935.

Second Motion for Rehearing Denied May 9, 1935.

Wilchar & Wilchar, of El Paso, for appellant.

W. H. Fryer and Coyne Milstead, both of El Paso, for appellee.

WALTHALL, Justice.

In this case Claud M. Buffington, appellant, sued American Grocery Company, a corporation, for damages for malicious prosecution.

The facts, briefly stated, are that in 1926, appellant and appellee entered into an agreement by the terms of which appellant was to wholesale groceries for appellee in the state of New Mexico; that appellant was to furnish his automobile and himself pay all hotel bills and 40 per cent. of drayage on cars shipped direct to that territory from the manufacturer, 40 per cent. of all warehousing costs on all merchandise that was not sold on arrival of same; that appellant was to bear 40 per cent. of all bad account losses in that territory; that appellant was to receive 40 per cent. of all profits made from all business and appellee was to receive 60 per cent. of all profits, and to pay 60 per cent. of all losses; they agreed that said agreement constituted a partnership as a matter of law between appellant and appellee; that the only change that was thereafter made in said partnership arrangement was that appellant was authorized to make arrangement for opening up a branch house for said partnership business at Silver City, N. M., and that in pursuance of such authorized branch of business, a warehouse was engaged by appellant, a truck was purchased, and its purchase price was equally shared by appellant and appellee.

Appellant and appellee continued said business relationship until about January 12, 1932, at which time, it is alleged, "defendant wrongfully ousted plaintiff from the management and control of said branch house in Silver City, New Mexico, taking into defendant's possession plaintiff's receipts, paid checks, letters, files and other private papers a list of which plaintiff is unable to give" and appellee is given notice to produce same on the trial; appellee began to threaten appellant with a criminal prosecution, and on February 13, 1932, appellee, acting through its agent, Harry Gollob, caused a criminal complaint to be filed in Grant county, N. M., charging appellant with embezzlement from appellee, under the laws of New Mexico, which complaint was on March 22, 1932, dismissed, and that on the same day appellee, acting as before, made two affidavits charging appellant with embezzlement from appellee, a felony; that appellant was arrested on said charges and forced to make bond, to employ an attorney to defend him against said criminal charges, which appellant alleged were untrue. Said prosecutions were finally dismissed on December 1, 1933, by the district court of Grant county, N. M.; that said complaints were without probable cause; that appellant was not guilty of the offenses charged; that appellee acted maliciously in that said complaints were wrongful acts, knowingly and intentionally done without probable cause; that appellee did not in good faith make a full disclosure of all the facts to the district attorney at the time of making said complaints, nor at the trial on said complaints; that by reason of said complaints appellant suffered damages. It is alleged that all books of account were kept by appellee in El Paso and notice given to produce same on the trial; that at the time of filing said complaints appellee was indebted to appellant in a large sum of money over and above any claim of appellee against appellant; appellant pleaded his good character and his damages, also his exemplary damages.

In addition to a general demurrer and special exception, appellee pleaded general denial, special denial that there existed a partnership relation; denied that it maliciously

or wrongfully contrived to injure appellant or destroy his character or reputation, or without probable cause, made complaint against appellant, or maliciously instituted any charges or complaint, or either of them; that the charges filed were filed after a full, fair, and frank disclosure of all material facts in connection with the matter referred to had been made to the district attorney and his assistants, and only after appellee sought the advice of legal counsel, naming them, and only after all the facts in the possession of appellee were duly presented to the district attorney of Silver City, N. M., and his assistant, and only after appellant had admitted embezzlement and unlawful conversion of appellee's property and numerous forgeries of appellee's name.

On special issues submitted, the jury found: (1) American Grocery Company did not act without probable cause in causing to be filed the complaint (a) dated March 22, 1932, charging embezzlement of $150; (b) dated March 22, 1932, charging embezzlement of $52.30; (2) American Grocery Company acted without malice in filing the complaints in each of the two above instances; (3) and (4) C. M. Buffington sustained actual damages by reason of having been named in the complaints filed against him on February 13, 1932, and the two complaints filed on March 22, 1932, in the sum each of $2,500, aggregating the total sum of $7,500; (5) and (6) no amount of exemplary damages should be assessed against the American Grocery Company, in this case; (7) Helen Jarvis (appellee's bookkeeper) did not make a full, fair, and frank disclosure of all the facts within the knowledge of the American Grocery Company, which were material to the accusations of embezzlement against appellant Buffington, to the district attorney in Silver City, prior to the filing of the two complaints dated March 22, 1932, charging embezzlement; (8) C. M. Buffington was innocent of the offense with which he was charged in the two complaints of March 22, 1932.

In response to charges requested by appellant, the jury found: (7) American Grocery Company did not file the complaints on March 22, 1932, from any other motive than a belief in the guilt of Buffington; (9) at the time of the filing of the complaints on March 22, 1932, American Grocery Company was indebted to Buffington in a sum greater than the amounts that Buffington had failed to account for and remit to American Grocery Company; (10) the money Buffington had not accounted for in collections was expended by him in conducting the business of American Grocery Company, and for his personal expenses in the conduct of said business; (12) early in 1926, Buffington and American Grocery Company entered into an agreement that Buffington would take over the Silver City territory for the purpose of engaging in a wholesale grocery business, and that Buffington would furnish an automobile for soliciting trade at his expense, and would receive 40 per cent. of the gross profits, and would pay 40 per cent. of the expenses and bad account losses sold by Buffington in the Silver City territory, and that as a part of said business said parties purchased a truck and each agreed to pay equally for same, and that all other expenses and profits in said Silver City branch would be divided 40 per cent. to Buffington and 60 per cent. to American Grocery Company.

At the conclusion of the evidence, appellant and appellee each moved for an instructed verdict, respectively, in his and its favor; appellant's motion was for $5,000. The court overruled appellant's motion, and rendered judgment for appellee, from which judgment appellant brings the case to this court for review.

## Opinion.

▇▇ Appellant submits that the jury was guilty of misconduct and on that ground a new trial should be granted.

We have read the evidence of each of the eleven jurors who testified on the examination on the question of misconduct. The evidence covers about 700 pages of the record, besides the many exhibits, in questions and answers, and is too voluminous to copy it here.

We think the controversy among the jurors can be stated briefly so as to apply thereto our view of the law whether a new trial should be granted on the ground of misconduct.

When the jurors voted on the first two issues, want of probable cause and malice, in filing the complaints, they discussed them, especially the first one, at some length, and stood numerically about seven to five. One of the jurors then refused to vote further until the jury had stated an amount that appellant had been damaged, and insisted that the jury pass the first two questions until the amount of the damages had been stated. The jury then took up the amount of appellant's compensation and voted his damages at $7,500; $2,500 for each of the three complaints. Having fixed the compensation, the

jury then took up the first two issues; some of the jurors did not seem to understand the effect of voting "no" on the first issue. In discussing its effect upon the amount of the damages the jury had voted appellant should receive some of the jurors testified that others of the jury stated that to vote "no" on the first two issues would have no effect on the issue of compensation the jury had voted; that appellant would receive his damages or a judgment for it anyway, and regardless of how the first two issues should be decided, and with that understanding the jury voted "no" on the first two issues. There is no doubt in our opinion, from the evidence of the jurors in the record, but that the compensation appellant should receive was of first consideration in the mind of the jury, and that the findings on the other issues would not affect the finding on the issue of damages. The findings on the first two issues, and on the compensation to be awarded appellant, are the only issues upon which there was any controversy, as disclosed by the record. Some of the jurors seem not to have heard the statement made by others of the jury that the compensation allowed appellant would not be affected by the vote on the first two issues, but in considering the question we will assume that the jury fully understood that the compensation voted appellant would not be affected or disturbed by voting "no" on the first two issues.

The question is then presented: Should such misconduct of the jury shown reverse the case? Appellant refers us to Carson v. Texas Pipe Line Co. (Tex. Civ. App.) 59 S.W. (2d) 328; Abrams v. Bradshaw (Tex. Civ. App.) 2 S.W.(2d) 917, affirmed by the Commission of Appeals, 24 S.W.(2d) 372; Warnack v. Conner (Tex. Civ. App.) 74 S.W.(2d) 719.

The existence or want of probable cause is generally a mixed question of law and fact. Shannon v. Jones, 76 Tex. 141, 13 S. W. 477; Ramsey v. Arrott, 64 Tex. 320. Ordinarily probable cause is a question of law. When there is a conflict of evidence it then becomes a mixed question of law and fact. The jury decides the facts, and the court decides whether the facts found show probable cause or a want of probable cause. Here the jury could decide whether appellee for the purpose of extorting money from it, or with intent to vex, harass, or injure appellant, instituted or caused to be instituted the prosecution of the crime of embezzlement under the laws of New Mexico. When the jury has decided the facts the court decides from the facts found whether appellee had or did not have probable cause for filing the charges.

The above cases referred to by appellant were personal injury cases, and the facts of misconduct of the jury there charged were similar to the facts charging misconduct of the jury in the instant case. However, there is this difference to which we have given much thought, and which difference we have concluded makes a very decided difference in the result. In the above cases the one special issue about which the misconduct is charged, and which controlled the verdict, was the one material issue or issues on the controlling matter under which the investigation depended. In this case let us concede that if there were no material facts that were found by the jury other than issues 1 and 2, about which there was a controversy in the jury room, the trial court might not have been justified on that ground alone in overruling the motion for a new trial unless the uncontroverted evidence showed the truth of the matter alleged in the complaints. The question we are now considering is whether the court was in error in refusing to grant a new trial upon the ground of the jury's misconduct, and upon the finding of issues 1 and 2, arising out of the matter already stated, advice of other jurors on issues 1 and 2.

The court gave appellant's requested special charge No. 7, which reads as follows: "Do you find from a preponderance of the evidence that the defendant, American Grocery Company, caused the complaints to be filed against the plaintiff on March 22, 1932, from any other motive than a belief in the guilt of plaintiff. Answer yes or no. To which the jury answered, 'No.' "

Now while the jury was induced by the advice of other jurors to find issues 1 and 2 so as to destroy the compensation found for appellant, we understand from the evidence on the question of misconduct that the jury considered the questions 1 and 2 as immaterial and did not pass upon the question as they should, and voted upon them only because they were there; that is, the jury did not, in passing upon issues 1 and 2, apply the test whether the circumstances were such as to induce action on the part of an ordinarily prudent person. It seems to us that if the appellee had no motive in filing the complaints other than a belief in the guilt of appellant, taken in connection with the evidence, would seem to give the trial court the right to exercise his discretion in entering judgment. The existence of malice is essential to the right to maintain the action. 28 Texas Jurisprudence, pages 456, 457, and the many cases referred to under note 8. The finding of the issue as above, established from the

facts on the trial, destroys appellant's right to maintain the action.

We have studied the evidence and have concluded that appellant failed to make out his case, and that the court was justified from the facts shown, in entering judgment for appellee if not prevented by other matters to be later considered.

We think the court was not in error in excluding from the consideration of the jury the fact, if it was a fact, that appellee was indebted to appellant in a larger sum of money than the amount appellant had not accounted for. We may not try in this suit the matters that entered into the controversy between appellee and the Silver City Bank, or any party other than the parties in this suit; appellant not being a party in such matters. It certainly cannot be the law that appellant could retain for himself and not report to appellee money that belonged to appellee and then defend on the proposition that appellee owed him that much or more.

If we have not misconstrued the evidence, appellant admitted on the trial that he had retained and not reported to appellee about $1,750. With that fact, undisputed in the record, it would be immaterial what the other evidence discloses, appellee could hardly be guilty of malicious prosecution.

We might say here that we have not considered appellant and appellee as partners, or that a partnership relation existed between them. They may have thought that their agreement constituted a partnership, but, one party being a corporation, would prevent such relation.

We have considered all the propositions not discussed, and have concluded that they present no reversible error, and are overruled.

The case is affirmed.

### On Motion for Rehearing.

**WALTHALL, Justice.**

Appellant has presented a forceful motion for rehearing in this case and has laid great stress upon the fact that we did not reverse the judgment here because of misconduct on the part of the jury.

We are of the opinion that the facts in this case show as a matter of law that appellee had probable cause for filing the complaints against appellant, and that therefore the trial court should have instructed a verdict in its favor.

It appears from the testimony of appellant and his witnesses that he prepared a list of sums which he had collected and not accounted for; had given that list to his attorney and sent such attorney to confer with appellee's agents; that the said attorney, accompanied by appellant's wife, offered to turn over in settlement of such shortage an equity owned by appellant in a home; and that later, appellant, upon advice of counsel, refused to discuss the shortage further with appellee's agent.

We fail to see, aside from the many other facts which might justify appellee's action, how it can be contended for one moment that appellee acted without probable cause in filing the criminal complaints. It would certainly be an unusual state of affairs if one person could go to another, confess to having embezzled the property of that person, and then, after criminal proceedings had been commenced, recover damages for malicious prosecution.

Under this view of the case, the motion should be, and is, overruled.