WITHERSPOON OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 52491. Promulgated October 20, 1936.

*J. B. Lewright, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

OPINION.

MORRIS: The first question for our determination pertains to the deductibility of a proportionate part of the partnership loss sustained in the taxable year 1924 by Medina Refining Co., of which the petitioner contends it was a member. The respondent concedes the loss to be properly deductible if we find, as a matter of law, that the petitioner was a member of such partnership. While there are many factual obstacles which might, without more, defeat the petitioner's cause—such, for instance, as the failure of the petitioner to supply us with the details surrounding the sale of Witherspoon's Medina Refining Co. interest to his daughters and the resale of that interest back to the petitioner (instead of the legal conclusions of witnesses that such interest was "sold"); failure to supply us with the various agreements of copartnership, or the terms thereof, or with the books of account of Medina Refining Co. to show who the partners of that company were at the various times alleged; the fact that it is not at all clear that the partnership interest purchased by Witherspoon's daughters was ever actually paid for—indeed, just the opposite appears, or that any legal consideration passed from the petitioner to them; and the fact that it does not appear that, although Medina Refining Co. earned large profits, distributions thereof were ever made to them, as partners—we believe it sufficient to rest our decision upon the failure to establish the exception to the general rule of law prohibiting corporations from becoming members of partnerships. *Abraham B. Johnson*, 7 B. T. A. 820.

In *Southern Oil & Gas Co.* v. *Mexia Oil & Gas Co.* (Tex. Civ. App.), 186 S. W. 446, a question was whether a corporation could legally become a member of a partnership, and in holding that it could not, the court said:

* * * Again, the appellant and the appellees Mexia Oil & Gas Company and Texas Gas Company are separate private corporations and there is no allegation or proof that either of them was authorized by its charter to enter into private partnerships, and without such authority being so conferred they would not be authorized so to do. [Citations.] In the last-cited case it is said:

"Unless specially authorized to do so, corporations have no power to enter into partnership with other corporations or persons, and as the petition in this case failed to allege any such charter powers, it was insufficient to fix the liability of the Irrigation & Improvement Company as a partner."

Also, in *Ogus, Ravinovich & Ogus Co.* v. *Foley Brothers Dry Goods Co.* (Tex. Civ. App.), 241 S. W. 267, it was said:

It is a well-established general rule that a corporation cannot form a partnership with another corporation, nor with an individual. The reason for the rule is that in entering into a partnership the identity of the corporation is lost or merged with that of another, and the direction and management of its affairs is placed in other hands than those provided by the law of its creation. Both the law and public policy forbids enforcement by the courts of such partnership agreements. [Citations.]

In *Humble Oil & Refining Co.* v. *Strauss* (Tex. Civ. App.), 243 S. W. 528, the court said:

\* \* \* The appellant was a corporation, and as a general rule cannot enter into partnership relations with other parties. But sometimes after the execution of such a contract courts will sustain the relation to prevent injustice. For a discussion on this point we refer to *Millers' Indemnity, etc.* v. *Patten* (Tex. Civ. App.), 238 S. W. 240, rendered by Mr. Justice Boyce of this court. There will be no presumption that the parties intended to enter into an ultra vires contract, but the presumption is that they knew the powers of the corporation and the law with reference thereto, and that they intended to obey the law. The trial court was therefore justified in finding there was no partnership. \* \* \*

See also *Burton-Lingo Co.* v. *Federal Glass & Paint Co.* (Tex. Civ. App.), 54 S. W. (2d) 170, and *Buffington* v. *American Grocery Co.* (Tex. Civ. App.), 81 S. W. (2d) 808.

The basic issue is clearly defined, i. e., whether the petitioner was a member of the partnership of Medina Refining Co. It neither alleges nor has it offered proof that its charter authorized it to do so. Under the laws of Texas the general rule must apply except where there is some special charter authorization. The petitioner's charter has not been placed in evidence and we know nothing of its provisions. A matter so susceptible of proof does not warrant the substitution of conjecture. If such proof were favorable to the petitioner's cause is it not as reasonable to presume that it would have been supplied—that all doubt might be removed—as to presume that it acted lawfully under the circumstances, as it would have us do? The only reasonable inference to be drawn from the failure to make this simple proof, if infer we must, is that it would defeat the petitioner's cause. Upon this issue the respondent's determination must be approved.

Since the petitioner has assigned no error in the respondent's determination for 1925 it is approved.

The remaining three allegations of error pertain to the same question; i. e., may the petitioner deduct the undepleted and undepreciated cost, less salvage, in the taxable years 1924 and 1926, of oil wells known as Burke Nos. 8, 10, 4, 6, and 9, and Brewer No. 1, such

wells having ceased to produce and having been abandoned in these two taxable periods, in the computation of net taxable income.

Section 234 of the Revenue Acts of 1924 and 1926 provides in part as follows:

(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee; * * *

### Regulations 65, promulgated under the Revenue Act of 1924:

Art. 215. *Computation of depletion allowance for combined holdings of oil and gas wells.*—The recoverable oil belonging to the taxpayer shall be estimated for each property separately. The capital account for each property shall include the cost or value, as the case may be, of the oil or gas lease or rights plus all incidental costs of development not charged as expense nor returnable through depreciation. The unit value of the recoverable oil and/or gas for each property is the quotient obtained by dividing the amount returnable through depletion for each property by the estimated number of units of recoverable oil and/or gas on that property. This unit for each separate property multiplied by the number of units of oil and/or gas produced within the year by the taxpayer upon such property will determine the amount which may be deducted for depletion from the gross income of that year for that property, subject, however, to the limitation contained in article 201 (*h*). The total allowance for depletion of all the oil and/or gas properties of the taxpayer will be the sum of the amounts computed for each property separately. However, in the case of gas properties the depletion sustained for each pool may be computed by using the total amount returnable through depletion of all the tracts of gas land owned by the taxpayer in the pool and the average decline in rock pressures of all the taxpayer's wells in such pool in the formula given in article 212. The total allowance for depletion in the gas properties of the taxpayer will be the sum of the amounts computed for each pool.

Art. 201. (*c*) A "mineral property" or "property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface only as is reasonably expected to be underlaid with the mineral. The value of a mineral property is the combined value of its component parts.

### Regulations 69, promulgated under the Revenue Act of 1926:

Art. 211. (*b*) When the value of the property at the basic date has been determined and the allowance is based upon such value, depletion sustained for the taxable year shall be computed by dividing the value remaining for depletion by the number of units of mineral to which this value is applicable, and by multiplying the unit value for depletion, so determined, by the number of units sold within the taxable year. Such depletion deduction is subject, however, to the limitation in article 201 (*h*). In the selection of a unit for depletion preference shall be given to the principal or customary unit or units paid for in the product sold.

Art. 201. (*c*) A "mineral property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface only as is

reasonably expected to be underlaid with the mineral. The value of a mineral property is the combined value of its component parts.

In so far as the amounts here claimed represent undepreciated costs of physical assets—other than those held includable in depletable cost in *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459; *Petroleum Exploration* v. *Burnet*, 288 U. S. 467; and *Burnet* v. *Jergins Trust*, 288 U. S. 508—the petitioner is entitled to deductions upon abandonment of the wells to which they relate. *Belridge Oil Co.*, 11 B. T. A. 127, and *United Oil Co.*, 25 B. T. A. 101.

This leaves for consideration whether the costs of preliminary development and drilling of the wells in question, exclusive of the costs of physical property which is subject to depreciation, may be deducted as a loss when the wells were no longer commercially profitable. The petitioner's claimed deduction is based on the theory that the entire cost of any particular well should be recovered ratably over the production of that particular well. The respondent treated the producing tract as a unit, applying against each barrel of oil produced the depletion unit derived from the total cost of all wells and estimated recoverable oil. Under his method each barrel of oil produced is burdened with an equal proportion of the cost of all wells on the tract. That method obviously precludes such a deduction as the petitioner claims, as long as the entire tract is not abandoned.

Because of the recognized difficulties in the computation of depreciation and depletion the Congress expressly delegated the right to make rules and regulations therefor. *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301; *New Creek Co.* v. *Lederer*, 295 Fed. 433; certiorari denied, 265 U. S. 581. Article 215 of Regulations 65 prescribes how the reasonable allowance for depletion authorized by the statute shall be computed. It is therein provided that the allowance shall be based upon the production of each separate property which is defined as the mineral deposit (art. 201 (c)), or separate tracts or leases of the taxpayer (art. 221, Regulations 69). That article further provides that the unit of depletion for each separate property, multiplied by the number of units produced within the year upon such property, will determine the amount which may be deducted for depletion from the gross income of that year. This clearly indicates that all costs recoverable through depletion are to be returned over the producing life of the tract or property, which was the principle followed by the respondent in this proceeding. To hold otherwise would necessitate constant revision of the depletable base with corresponding change in the unit of depletion. Depleting on the basis of the entire property returns to the taxpayer all his costs providing his estimate of recoverable oil is fairly accurate. Such a method removes the uncertainties that are inherent in the petitioner's method.

Subsequent regulations have carried the same interpretation of similar provisions of the statute. This interpretation, which is reasonable and practical, must be regarded as having the approval of Congress. *Brewster* v. *Gage*, 280 U. S. 327; *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, *Vinton Petroleum Co. of Texas* v. *Commissioner*, 71 Fed. (2d) 420.

Under the 1926 Act the taxpayer was permitted to calculate depletion upon the basis of cost alone (sec. 204 (c)), or else to deduct 27½ percent of gross income from the property without reference to cost or discovery value (sec. 204 (c) (2)). In *United States* v. *Dakota-Montana Oil Co.*, *supra*, the Court held that there was no ground for supposing that Congress, by providing a new method for computing the allowance for depletion, intended to narrow the function of that allowance but that depletion includes, under the 1926 Act, precisely what it included under the earlier acts. It then used the following language:

Article 225 [Regulations 69] limits the depreciation for which an allowance may be made to that of "physical property such as machinery, tools, equipment, pipes" etc. We do not doubt that the effect of this language is to require the taxpayer to look to the depletion allowance, in this case 27½ per cent of gross income, for a return of the costs of developing and drilling the well, which are involved here.

It was likewise held in *Vinton Petroleum Co. of Texas* v. *Commissioner*, *supra*, that when a taxpayer elects to take the percentage depletion that allowance covers all elements of depletion.

The statute provides for a reasonable allowance which connotes as accurate a determination as is possible to accomplish the purpose of its enactment. One defect is immediately noticeable in the application of the facts to the petitioner's theory, even assuming its soundness. The petitioner kept no production records of the individual wells after the second well was brought in. All the oil was run into field tanks where a gauge was made of the production of the entire tract. It was therefore impossible for it to determine, based on actual production of any well, the amount of depletion that particular well had sustained and consequently the remaining costs to be recovered. It substituted average for actual production; that is it divided the total production by the number of producing wells, thus arriving at an average production per well and used that average as the prior sustained depletion of the wells in question. That these wells were not average is evidenced by the fact that their productive life was considerably shorter than their estimated life, although extra measures were taken to keep them at profitable production. The computation of sustained depletion upon that basis in order to arrive at the unrecovered costs distorted those costs by the difference between the actual and average production. The peti-

tioner computed separate depletion upon the wells in question only for the purpose of the deductions in controversy. In so doing, reasonable accuracy, as contemplated by the statute, was sacrificed.

The respondent's determination on this point being in accordance with the regulations, which are a reasonable interpretation and application of statute, is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*